MARIE STEINBUCHEL *et al* v. TIMOTHY M. LANE.

No. 10227.

1. RIPARIAN PROPRIETOR—*held, on facts, not entitled to island, whether river navigable or not.* An island, containing about twenty-six acres of land, in the Arkansas River opposite the mouth of the Little Arkansas, lying between well-defined channels of the river, was not surveyed when the lines were run along the banks and it was not noted on the government plat then made. The banks of the river were meandered as in the case of a navigable stream. A tract of land lying on the north bank of the river, bounded by it, and containing 129.67 acres, was patented to S., under whom the plaintiffs claim title to the island. About eight years after the survey of the banks, the island was surveyed, and soon thereafter was patented to N., under whom the defend-

ants claim. *Held:* that, under the facts of this case, whether the river was navigable or not, the plaintiffs' boundary extended no farther than the middle thread of the north channel of the river.

Error from Sedgwick District Court. C. Reed, Judge. Opinion filed January 8, 1898. *Affirmed.*

*Thornton W. Sargent*, for plaintiffs in error.
*Stanley & Vermilion*, for defendant in error.

ALLEN, J. This case involves the title to part of an island in the Arkansas River, opposite the mouth of the Little Arkansas. In the year 1867, the lands lying along that part of the Arkansas River were surveyed by authority of the Government. In making such survey both sides of the river were meandered, and no notice was then taken of this island. It was not indicated on the plats of the survey. In 1869, William Smith settled on the north half of the southeast quarter and lot 5 of section 18, township 27, range 1, east; and, on the tenth of June, 1873, a patent therefor was issued to him by the United States. The land in controversy is that part of the island lying south from and opposite lot 5. The plaintiffs are the owners of the land so patented to William Smith, and claim title to the land in controversy as an appurtenant to lot 5, which was bounded on the south by the river. In 1875, Mary Norman settled on the island. At her instance it was surveyed by orders from the General Land Office, and designated as lot 4 of section 17, lot 10 of section 18, lot 8 of section 19, and lot 8 of section 20. A patent for the island, described as such lots, was issued to her on December 30, 1876. The quantity of land granted is stated in the patent as 25.70 acres. The defendant claims title under a chain of conveyances from Mary Norman.

The contention of the plaintiffs is, that when the

government granted to William Smith lands bounded by a non-navigable river, the patent conveyed title to the middle thread of the stream ; and that a subsequent survey of the island and grant of it to another, could not divest the title which had already passed to Smith.

Much of the testimony was directed to the question whether the Arkansas River above the mouth of the Little Arkansas was navigable prior to 1875. A large part of the briefs is devoted to a discussion of the facts bearing on the question of navigability and the law applicable to them. As we view the case, it is unimportant whether the river was navigable or not. The patent to William Smith conveyed to him the north half of the southeast quarter and lot 5 of section 18, containing 129.67 acres, according to the official plat of the survey of the lands returned to the General Land Office by the Surveyor General. The southern boundary of his land as shown by that plat was the Arkansas River. The jury found under the testimony that the river was then navigable, although it has now ceased to be so. But, whether that finding be right or wrong, it appears without dispute that, in 1869, when Smith settled on his land, the island contained about twenty-six acres, and that the waters of the Arkansas River divided at the head of the island, forming two distinct channels, the one on the north of the island being about two hundred feet wide, and the one on the south about three hundred feet wide. There is no claim that this island or any part of it was included in the computation of the quantity of land patented to Smith.

We are not inclined to question the soundness of the rule applied in the case of *Grand Rapids & I. R. Co. v. Butler*, 15 S. C. R. 991. In that case, a small island, containing 2.56 acres at the time of the survey,

lay between the middle of the stream and the land on the shore belonging to Butler. There was conflict in the testimony as to the character of the island at the time the shores of the river were meandered. Other islands in the river were surveyed at the time the west bank was meandered, but this island was not surveyed until nearly twenty years thereafter. The Supreme Court of Michigan held that under the law of that State the original grant passed title to the middle thread of the river, which was west of the island, and that no subsequent survey by the government could deprive the grantees of it. This decision was affirmed by the Supreme Court of the United States. There can be no question as to the soundness of the rule that the government of the United States cannot deprive a riparian proprietor of any substantial right that passed to him under a patent to the bank of a stream, whether navigable or not. In this case, however, the question is, What was the boundary of the land patented to Smith? Was it the north bank of the river, the centre line of the north channel, the centre line of the south channel, or, as seems to be claimed by the plaintiffs in error, a line running midway between the north and south banks, dividing the island into two parts, making the thread of the stream extend across dry land and over primitive soil? The case of *Horne v. Smith*, (15 S. C. R. 988,) decided on the same day with *Grand Rapids & I. R. Co. v. Butler*, shows that the rule is not to be applied inflexibly to every grant of lands bounded by a stream of water. The syllabus of the case is as follows:

"The official plat of a township showed that sections 23 and 26 are fractional, bordering on a river on the west; that a meander line runs through them, and that the area of certain lots in such sections is 170.42 acres. In fact along such meander line is a bayou, west of which, between it and such river, is a body of

land over a mile wide, containing six hundred acres which was never surveyed. The length of the section line between such sections from the east line thereof to the meander line, is given on such plat as 30.55 chains, while the distance from such east line to the main body of the river is about 1½ miles. *Held*, that such bayou and not the main body of the river is the boundary of such sections and lots, and that a patent to said lots containing 170.42 acres, according to the official plat, did not convey the land between the bayou and the main body of the river.''

In this case, the channel on the north was as much the Arkansas River as that on the south of the island. There was a well defined stream on either side. The island was not a mere shifting sand bar or temporary accretion. It was primitive soil, on which large trees were standing. The survey of lot five was along the bank of the river as though it were a navigable stream. The island, which would have fallen in four different sections if surveyed as though the stream were not navigable, was not included in the number of acres patented to Smith. He paid for 129.67 acres, and it is not claimed that it is necessary to include the island in order to make up this quantity of land. The island is in no sense an accretion to his property, nor was it ever so situated with reference to it as to render it an appurtenance necessary to the enjoyment of his rights as a riparian proprietor.

It is impossible to lay down a definite rule which will determine every case involving a question as to what passes by a grant of land bordering on a water course. Whether islands are intended to be reserved or to pass must be determined from their situation and extent and the action of the Land Department. The Government is not bound to make all its surveys at one time. It may convey public lands by such boundaries and designations as it deems most practicable. We think the facts of this case do not disclose

the intent to convey the island or any part of it to Smith, but that the acts of the Land Department, all taken together, must be construed to amount to a reservation of the land until it passed to Mary Norman, under whom the defendant claims. As having some bearing on the matters involved in this case, see *Wiggenhorn v. Kountz*, 23 Neb. 690 ; *West v. Fox River Paper Co.*, 82 Wis. 647 ; *Benson v. Morrow*, 61 Mo. 345. We do not think the conclusion here reached conflicts with either *Hardin v. Jordan*, (140 U. S. 371,) or *Lamprey v. Metcalf*, (53 N. W. Rep. 1139). We think that, at most, the plaintiff's boundary extends only to the middle thread of the north channel of the river. This conclusion renders it unnecessary to enter into consideration of the many questions discussed at length in the brief.

The judgment is affirmed.