(November 7, 1911.)

## AMEL ULBRIGHT, Respondent, v. GEORGE BASLING-TON, Respondent, and JAMES H. WRIGHT, Intervenor and Appellant.

[119 Pac. 292, 294.]

RIPARIAN PROPRIETOR—RIPARIAN RIGHTS ON MEANDERED LAKE.

(Syllabus by the court.)

1. Under the laws of this state, as construed by the uniform decisions of the highest court of the state, a riparian owner on a meandered stream or body of water, whether navigable or non-navigable, takes title to the center or thread of the stream.

2. A riparian proprietor on a meandered lake, where the lake is circular in form, must, in determining the boundary line between his land and that of an adjoining riparian proprietor, extend the side line or boundary line on a deflected course from the intersection of such side line with the meander line to the center of the lake.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County.   Hon. Robert N. Dunn, Judge.

Action to determine the right to a certain tract of land along the waterfront of Mud Lake lying between the meander line and the water line.   Judgment for the plaintiff and intervenor Wright appealed.   Judgment *reversed.*

McFarland & McFarland, for Appellant.

When water of lake, whether navigable or not, recedes and land is left dry, such land belongs to riparian owners from whose shore the water has receded.   (*Warren v. Chambers,* 25 Ark. 120, 91 Am. Dec. 538, 4 Am. Rep. 23; *Mitchell v. Smale,* 140 U. S. 406, 11 Sup. Ct. 819, 840, 35 L. ed. 442; *St. Paul & S. P. R. Co. v. Schurmeir,* 7 Wall. 286, 19 L. ed. 78; *Hardin v. Jordan,* 140 U. S. 371, 11 Sup. Ct. 808, 828, 35 L. ed. 428; *Knudsen v. Omanson,* 10 Utah, 124, 37 Pac. 250.)

The land in controversy is all below the meander line and was presumed to be the bed of Mud Lake.

The boundary line of the lots is the water line of Mud Lake, in accordance with the familiar rule "that a meander line is not a line of boundary, and that a patent for a tract of land bordering on a river (or lake) conveys the land not simply to the meander line, but to the water line." (*Johnson v. Hurst*, 10 Ida. 308, 77 Pac. 784; *Lattig v. Scott*, 17 Ida. 506, 107 Pac. 47; *Johnson v. Johnson*, 14 Ida. 587, 95 Pac. 499, 24 L. R. A., N. S., 1241; *St. Paul & P. R. Co. v. Schurmeier*, 74 U. S. 272, 19 L. ed. 74; *Hardin v. Jordan*, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. ed. 428; *Horne v. Smith*, 159 U. S. 40, 15 Sup. Ct. 988, 40 L. ed. 68.)

The department of the interior has decided that no error was committed in surveying these lands by the government.

"Even admitting that the deputy surveyor may not have followed the exact shore line of the lake in his meanders, and thereby left out a small fraction which should have been included in the original survey, the department will not recognize as unsurveyed public land any such small fraction where the original survey has stood for a number of years, after disposing of the adjoining lands and the rights of riparian owners have intervened." (See case of *Edward C. Hill*, 17 L. D. 568; also case of *Frank Level*, 21 L. D. 290.)

Where these claims overlaps, a diagonal line must be drawn from the point on the meander line where their lands join to the center of the lake as a boundary line between them. (*Murphy v. Kirwan*, 103 Fed. 104; *Hanson v. Rice*, 88 Minn. 273, 92 N. W. 982.)

J. L. McClear, and Ezra R. Whitla, for Respondents.

The whole question in this case is: Can a government lot, which by reason of being more or less than forty acres is called a lot, embrace land in more than one section? (*Johnson v. Hurst*, 10 Ida. 308, 77 Pac. 784; *Horne v. Smith*, 159 U. S. 40, 15 Sup. Ct. 988, 40 L. ed. 68; *Johnson v. Johnson*, 14 Ida. 587, 95 Pac. 499, 24 L. R. A., N. S., 1240; *Lattig v. Scott*, 17 Ida. 506, 107 Pac. 47; *Tolleston Club of Chicago v. Clough*, 146 Ind. 93, 43 N. E. 647; *Tolleston Club v. State*, 141 Ind. 197, 38 N. E. 214, 40 N. E. 690.)

Intervenor is not a riparian owner and has never been a riparian owner, from his own testimony, and if by reason of the drying up of water that may have been on a portion of the southwest quarter of section 6 at the time the first government survey was made, he has obtained a full quarter section, he has no reason to complain. (*Niles v. Cedar Point Club*, 175 U. S. 300, 20 Sup. Ct. 124, 44 L. ed. 171.)

The meander line is not a line of boundary. (*Horne v. Smith, supra.*)

AILSHIE, J.—This action was instituted by the respondent, Amel Ulbright, against George Baslington, who is also a respondent in this court, for the recovery of the possession of what plaintiff termed in his complaint, "All of fractional section 7 in township 51 north of range 5 west, Boise Meridian," and damages for the withholding of the possession thereof, as well as for the rents, issues and profits. Baslington filed his answer, alleging possession and ownership of the lands, and thereafter and by order of the court, the appellant herein, James H. Wright, was allowed to intervene. The intervenor alleged title by mesne conveyances from the United States to the E. ½ of the S. W. ¼, and lots 6 and 7 of sec. 6, township 51 north of range 5 west, Boise Meridian. The respondent, on the other hand, claimed the property in controversy by reason of being a purchaser from the Northern Pacific Railway Co. It appears that on the 22d of December, 1894, patent issued from the government under the Northern Pacific land grant to the Northern Pacific Railway Co. for lots 1, 2, 3, and 4 and the N. E. ¼ of the N. E. ¼ and the N. E. ¼ of the S. E. ¼, which comprised all of the lands in section 7 of township 51 north, range 5 west, Boise Meridian. These lands abut upon what is designated on the official map as Mud Lake, and the whole controversy here arises over the right to the land lying between the meander line and the water line of Mud Lake. This land was surveyed in 1880, and the survey thereof was approved by the surveyor general on July 23, 1881. Mud Lake was meandered in accordance with the statutes of the United States and the rules of the general land

office. The official plat of that survey comprising sections 6 and 7 of township 51 was introduced in evidence and is as follows:

INTERVENOR'S EXHIBIT NO. 2.

I hereby certify this to be a correct tracing of Secs. 6–7, **T.** 51 N., R. 5 W., B. M., on file in this office.

U. S. Surveyor General's Office, Boise City, Idaho. Jan. 24, 1910.

DARWIN A. UTTER,
U. S. Sur. Genl. for Idaho.

It will be seen from an examination of the plat, and it likewise appears from the field-notes and is also testified to by the witnesses, that lot 7 and the S. E. ¼ of the S. W. ¼ of sec. 6, belonging to the intervenor, abut on Mud Lake, and it likewise appears that lots 1, 2, 3, and 4 in sec. 7, belonging to Ulbright, abut on the same body of water. It will be noticed that lot 1 extends west some rods beyond the half section line or the southeast corner of the intervenor's premises. There is consequently a portion of the S. E. ¼ of the S. W. ¼ of sec. 6 extending from the corner to the westerly meander line of lot 1 in sec. 7 which does not abut on the lake and which therefore has no meander line.

The whole controversy in this case is over the right of ownership and possession of the land lying between the meander line of the intervenor's property and the water line of the lake, and comprises about 37 acres. This court has so repeatedly considered and passed upon the right of a riparian proprietor to take such land as he may find lying between the meander line and the center of the stream meandered, that it would seem useless for us to again enter into a discussion or consideration of that question. We have repeatedly held that the riparian or abutting upland owner will, as a general rule, take everything between his meander line and the center of the meandered stream. (*Lattig v. Scott,* 17 Ida. 506, 107 Pac. 47; *Johnson v. Johnson,* 14 Ida. 581, 95 Pac. 499, 24 L. R. A., ·N. S., 1240; *Moss v. Ramey,* 14 Ida. 598, 95 Pac. 513; *Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 784.)

The contention, however, is made by the respondent that the Northern Pacific Railway Co. took title by grant from the government to all the land within section 7, and that since the meander line and the section line coincide along the south boundary of appellant's land, that the appellant cannot cross that line, and consequently respondent is entitled to take all land within the exterior boundaries of what would constitute section 7. This position would be correct if the south boundary line of appellant's property were only a section or subdivision line, but it is more than that. It is a section line and a meander line and so appears from the official plat, and

likewise upon the field-notes as the same were returned by the surveyor to the surveyor general's office. This was a meander line of a body of water, and it follows that the patentee to the lands bounded by this meander line is a riparian proprietor, and he is consequently entitled to take to the water. The same is true as to the respondent, who owns lots 1, 2, 3, and 4 in section 7.

The rule with reference to the upland owner projecting the side lines of his premises in a right line to the center of the stream must necessarily receive a modification in the case of a circular lake. A lake has a center and sometimes a center line, but seldom a thread or stream. It is necessary, therefore, that the side lines of riparian and upland proprietors should converge to the center of the lake. In such a case, none of the lines can be projected in a right line with the section or subdivision lines as established by the government. In this case the deflected line establishing the boundary between the appellant and respondent, as the same will be extended from the meander line to the center of the lake, will start at the point where the west meander line of respondent's lot 1 connects with the south line of the S. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of section 6. From that point a right line should be drawn toward the center of the lake and thus establish the boundary line between the appellant and respondent. This is the rule which has been announced by some of the courts with reference to lakes, and it appeals to us as equitable and just. (See *Hanson v. Rice,* 88 Minn. 273, 92 N. W. 982.) In the foregoing case, the supreme court of Minnesota, in passing on the question as to the projection of side lines and the establishment of boundary lines between adjoining tracts, said: "The boundaries of adjoining tracts, as to land beyond the meander line, are fixed by extending their side lines on a deflected course from their intersection with the meander line toward a point in the center of the lake."

In *Hardin v. Jordan,* 140 U. S. 371, 11 Sup. Ct. 817, 35 L. ed. 439, the supreme court of the United States in commenting upon and criticising a decision of Judge Gresham, wherein the latter had held that since there is no current to a

lake and no thread to the stream, it was impracticable to extend the lines of riparian proprietors into lakes as is done with flowing streams, said:

"As to the supposed difficulty or inconvenience in applying the law, it is no greater than that which occurs on any bay or incurved shore, even of a large river, in adjusting the outgoing boundary lines between adjoining proprietors over the submerged bottoms or flats lying in front of their riparian lands. Just and equitable rules have been adopted for settling the mutual rights of parties in such cases. Where a lake is very long in comparison with its width, the method applied to rivers and streams would probably be most suitable for adjusting riparian rights in the lake bottom along its sides, and the use of converging lines would only be required at its two ends." (See, also, *Gouverneur v. National Ice Co.*, 134 N. Y. 355, 30 Am. St. 669, 31 N. E. 865, 18 L. R. A. 695, and notes.)

We conclude, therefore, that the appellant is entitled to take the upland between his meander line and the lake within side or boundary lines drawn from the end of the meander line at each side of his tract of land to the center of the lake; that is to say, the one line drawn from the extreme easterly point where the meander line bounds his upland and the other line drawn from the extreme westerly point where the meander line bounds his upland; and the same method should be pursued in establishing the exterior boundary lines of respondent's lands between the meander line and the lake.

The judgment must be reversed, and it is so ordered, and the cause is remanded for further proceedings in harmony with this opinion. Costs awarded to appellants.

Stewart, C. J., and Sullivan, J., concur.

### ON MOTION TO TAX COSTS.

(November 27, 1911.)

[119 Pac. 294.]

COSTS ON APPEAL—PRINTING OF TRANSCRIPT.

(Syllabus by the court.)

1. The amendments embodied in chapters 117, 118 and 119 of the 1911 Session Laws (1911 Sess. Laws, pp. 375 to 381), with reference to the prosecution of appeals to the supreme court, do not prohibit or forbid the printing of transcripts on appeal, and the appellate court will allow costs to be taxed for a printed transcript at the same rate that has heretofore been allowed under the rules of the supreme court.

AILSHIE, J.—The respondent, Ulbright, has filed his objections to appellant's cost bill and moves the court to tax the costs in accordance with the provisions of sec. 4913, Rev. Codes, as amended by act of March 10, 1911 (1911 Sess. Laws, p. 673), and Rules 83 and 84 of this court. The objection is made against only one item of the cost bill, which is set forth in the memorandum of costs as follows: "To amount paid Lakeside Printing Co. of Coeur d'Alene, Idaho, for printing transcript on appeal to the Supreme Court, 118 pages at 75¢ per page, $88.50."

Respondent contends that chap. 117 of the 1911 Session Laws (1911 Sess. Laws, p. 375) has so amended the law with reference to appeals as to provide for typewritten transcripts and to render a printed transcript both unnecessary and unauthorized. Counsel, therefore, insist that the only charge which can be made for transcript is the statutory fees that may be paid to the reporter and the clerk of the court, respectively, for extending the notes and preparing a typewritten transcript as prescribed by chaps. 117, 118 and 119, of the 1911 Session Laws (1911 Sess. Laws, pp. 375 to 381). While the new statute does not provide for or require the printing of the transcript, it does not prohibit the same, and the only reason which could be urged against the printing

would be the extra expense that might be entailed in so doing. Sec. 4434 of the Rev. Codes as amended would seem to indicate that the legislature did not intend that procuring a transcript of the reporter's notes as therein prescribed should be exclusive, because it is there said that "in lieu of preparing, serving and procuring the settlement of a bill of exceptions as in this chapter provided," the party may procure a transcript of the testimony and proceedings, etc. It will also be noted that no amendments have been made to the sections of the statute providing for the preparation and settlement of bills of exceptions. It might be said, however, that the amendments by inference and implication necessarily repeal sec. 4428, which provides for the settlement of a statement or bill of exceptions where the sufficiency of the evidence to support the verdict or findings constitutes the issue to be urged on appeal. However this may be, it is unnecessary to pass upon it here.

This statute is new, and we have seen but little of its practical operation. We are not at this time inclined to deny litigants the right to bring their cases here in printed form, nor are we inclined to deny a successful appellant the right to collect his costs as prescribed by the old rule of this court for printing the necessary transcript on appeal. The appellant who causes his transcript to be printed takes the chance of having to pay for the entire transcript if he is not successful; and in the event he is successful, we are inclined to allow him to collect the same costs which have heretofore been allowed in such cases.

The objections to the cost bill are overruled and costs are allowed as claimed in appellant's memorandum.

Stewart, C. J., and Sullivan, J., concur.