(February 6, 1915.)

## WILLIAM F. CALLAHAN, Appellant, v. STERLING G. PRICE, Respondent.

[146 Pac. 732.]

PATENT FROM UNITED STATES—LAND BORDERING NAVIGABLE STREAMS— TITLE EXTENDING TO NATURAL HIGH-WATER LINE ONLY—OWNER- SHIP IN AND TO BED OF LAKES AND NAVIGABLE RIVERS—ISLANDS NOT PASSING TO STATE—USE OF NAVIGABLE STREAMS FOR BENEFIT OF PUBLIC AS HIGHWAYS—JUDGMENT OF NONSUIT, AFFIRMED.

1. A patent from the United States for land bordering on a navigable lake or stream extends no farther than the natural high-water line.

2. When lands border on a stream, the banks of which are both well-defined and where the stream separates at the head of an island into distinct channels constituting a well-defined stream on either side, the boundary line of the land granted extends only to the natural high-water mark.

3. Where there is no evidence offered at the trial, as in this case, which establishes or tends to establish the fact that the island in controversy was at any time attached to or a part of lots bounded by a stream, it was not error for the court to grant a nonsuit.

4. The United States, since the admission of Idaho to statehood, has the power to dispose of subdivisions or fractional subdivisions of public lands consisting of islands that existed in the territory of Idaho prior to its admission as a state.

5. Islands in existence when Idaho was admitted to the Union did not pass to the state or come within the disposing influences of its laws, but remained the property of the United States subject to disposal by it.

6. It is the settled law of this state that no title to islands, lakes or the beds of streams passes to the patentees of the United States by the sale of border lots; that the state holds the title to the beds of navigable lakes and streams below the natural high-water mark, for the use and benefit of the whole people, subject to the rights vested by the constitution in the United States.

7. The Salmon river is a navigable stream, and is therefore a public highway belonging to the state.

8. Since statehood the state holds the title to the beds of all navigable lakes and streams, subject to the rights of the general government to regulate commerce, and the right by the public to the use of the same as public highways over which every citizen has a natural right to carry commerce, whether by ships, boats, the floating of logs or lumber, having due consideration and reasonable care for the rights of individuals as well as the public in the common use of such public highways.

9. The cases of *Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 785, *Lattig v. Scott,* 17 Ida. 506, 107 Pac. 47, *Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 499, 24 L. R. A., N. S., 1240, and *Ulbright v. Baslington,* 20 Ida. 539, 119 Pac. 292, 294, are hereby overruled in so far as they conflict with this opinion.

APPEAL from the District Court of the Sixth Judicial District for the County of Lemhi. Hon. J. M. Stevens, Judge.

Action to quiet title. Judgment of nonsuit for defendant. *Affirmed.*

A. C. Cherry, for Appellant.

The defendant on motion for nonsuit must admit all the facts which the evidence tends to prove; and in determin-

ing the propriety of a nonsuit at the close of plaintiff's case, the evidence most favorable to the plaintiff must be accepted as true; for the motion of nonsuit admits the truth of plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom. (*McDaniel v. Moore*, 19 Ida. 43, 112 Pac. 317; *Mineau v. Imperial etc. Co.*, 19 Ida. 458, 114 Pac. 23; *Hoff v. Los Angeles Pac. Co.*, 158 Cal. 596, 112 Pac. 53; *Lawyer v. Los Angeles Pac. Co.*, 161 Cal. 53, 118 Pac. 237.)

The case at bar is not within the purview of the case of *Lattig v. Scott,* but is governed rather by the cases of *Grand Rapids etc. R. R. Co. v. Butler,* 159 U. S. 87, 15 Sup. Ct. 991, 40 L. ed. 85, and *United States v. Chandler-Dunbar Water Power Co.,* 209 U. S. 447, 28 Sup. Ct. 579, 52 L. ed. 881.

F. J. Cowen, for Respondent.

There are no differences which would take this case out of the rule laid down in the *Scott v. Lattig* case and the rule announced in the later case of *Moss & Bro. v. Ramey,* 25 Ida. 1, 136 Pac. 608.

The Salmon river is a navigable stream under the decisions of this state. (*Idaho Northern R. R. Co. v. Post Falls Lbr. Co.,* 20 Ida. 695, 119 Pac. 1098, 38 L. R. A., N. S., 114.)

For the plaintiff to recover in this case it would be necessary for him to show that at the time of the patent to McCain this island was not in fact an island but constituted a part of the land conveyed to McCain by that patent. This the plaintiff has not attempted to do, for the earliest date that a witness of the plaintiff remembers having seen the island in question was about the year 1887 or 1888, and that is stated only from recollection. (29 Cyc. 349, 353; *Fowler v. Wood,* 73 Kan. 511, 117 Am. St. 534, 85 Pac. 763, 6 L. R. A., N. S., 162; 40 Cyc. 625.)

BUDGE, J.—This action was brought in the district court of the sixth judicial district, for Lemhi county, to quiet title to the following described lands, situate, and being in Lemhi county, to wit: All the upper portion of that certain island lying and being in the Salmon river just opposite lot 14, of

section 6, and lot 1 of section 7, township 21 N., range 22 E., Boise meridian.

The appellant claims title to the upper portion of said island by virtue of a patent from the United States to Sylvester McCain and to the lower portion of the island by virtue of a deed from Thomas Elder, probate judge of the county of Lemhi to Sylvester McCain; said Elder being the successor in office to one Ellwood T. Beatty, to whom a patent was issued by the United States conveying the land in question to be held in trust for the several use and benefit of the occupants of the townsite of Salmon City; said patents conveying to the patentees the lands bordering along the Salmon river. The particular deed in controveisy in this action is appellant's exhibit "C," a deed executed by Thomas Elder, as probate judge, to Sylvester McCain, appellant's predecessor, conveying the land bordering along the bank of the Salmon river described as follows, to wit:

"Commencing at the Witness stake on the right bank of Salmon River and on the section line between Sections 6 & 7, in Township No. 21, North of Range No. 22, East of Boise Meridian, and running thence along said Section line N. 89 degrees 51 minutes East Seventy nine (79) rods and two (2) links, thence North 24 degrees East, Sixteen (16) rods and fourteen (14) links, thence N. 54 degrees 30 minutes West fifty four (54) rods, and thence S. 43 degrees West sixty two (62) rods to the place of beginning. Area (13) Acres and one hundred and twenty seven (127) Rods, in the same more or less."

This cause was tried to the court with a jury upon the complaint of the appellant and the answer and cross-complaint of the respondent. The complaint set out a description of the island in question and a statement of the facts upon which the appellant relied to establish his title to said island and lots 14 and 1. Appellant further alleged that the respondent, Price, claimed and asserted an estate in and to said island and had entered into possession of the island without right, title or license and wrongfully withholds the possession of the same, to appellant's damage in the sum of

$200; that since entering upon said island, respondent has cut a large number of valuable trees into cordwood and hauled the same away, and that by reason thereof large portions of said island are liable to be washed away, to the irreparable loss and injury of the appellant.

Upon filing the verified complaint together with affidavit of C. G. Mathewson, an injunction was issued in this cause and served upon the respondent, restraining him from further committing the acts complained of in the appellant's complaint. Respondent, in his answer, denies that the appellant or his grantors or predecessors in interest, have been or were the owners for a long time hitherto, or at all, of the island as described in the appellant's complaint, or any portion thereof, and alleges that he entered into possession of said island rightfully and is lawfully seised and possessed of the same. The respondent admits that upon entering into possession of the island in controversy he cut timber and trees and hauled the same away, but denies that the appellant has been damaged in the sum of $200 or in any other sum.

In respondent's cross-complaint he alleges that he is the owner, in the possession and entitled to the possession, subject only to the paramount title of the United States, of the following described real estate, situate in the county of Lemhi, to wit: All that certain island consisting of about 100 acres of land lying and being in the Salmon river, just west and opposite appellant's lot 14, in section 6, and lot 1 in section 7, township 21 north, range 22 east, Boise meridian.

After the appellant had introduced his testimony, the respondent moved for a nonsuit, ''On the grounds of insufficiency of evidence,'' which motion was granted and judgment of nonsuit entered.

There are two assignments of error:

First, that the court erred in granting the motion for nonsuit.

Second, that the court erred in striking out the evidence of Chat Mathewson and in sustaining respondent's objection to certain evidence.

The lands lying on the east side of the Salmon river opposite the island involved in this litigation were surveyed in 1881, while the lands lying on the west side of the river opposite the island were surveyed in 1890 or 1891. From the record it would seem that the surveyor who made the survey of the east bank of the river mentioned no islands, while the surveyor who surveyed the lands on the west side of the river noticed two islands and indicated the same upon the map filed with his field-notes.

The evidence offered on the part of the appellant establishes the fact that he is the owner of a considerable tract of land bordering along the eastern bank of the Salmon river and abutting the same, including lots 1 and 14, and is in the possession of all of the lands covered by his patents and deeds except possibly a small portion that may have been eroded away from the main land by the action of the river. The respondent in this case has located upon the island west and across the east branch of the Salmon river from said lots 1 and 14.

The real question involved in this litigation is the west boundary line of appellant's land. If this west boundary line extends to the thread of the stream of the west channel of the Salmon river, appellant would then be entitled to the possession of all of the upper portion of the island in controversy. This island is not contained either in acreage or description, in the patents or mesne conveyances to appellant's predecessors in interest, and if it should be determined that the appellant is entitled to the island, it must be upon the theory that his west boundary line extends across the east channel of the Salmon river. In *Packer v. Bird*, 71 Cal. 134, 11 Pac. 873, it was held that a patent from the United States for land bounded on a river which is actually navigable, extends no farther than the edge of the stream, and does not include an island separated from the upland by a slough forming part of such river, although the slough is not ordinarily navigable, or not navigable at all. In *Steinbuchel v. Lane*, 59 Kan. 7, 51 Pac. 886, it is held that a patent for lands bordering on a stream, both banks of which were

meandered by the government, without any reference to a large
.island therein composed of primitive soil, includes no part
of the island opposite such land as an appurtenance thereof,
whether the stream be navigable or not, where it separates
at the head of the island into two distinct channels, constitut-
ing a well-defined stream on either side, and it is not neces-
sary to include any part of the island to make up the quan-
tity of land included in the patent; but at most, the boundary
of the land granted extends only to the middle of the thread
of the channel between it and the island. In *Shoemaker v.
Hatch,* 13 Nev. 261, it was held that an unsurveyed island of
considerable size in a river is no part of the land surveyed
on the side opposite one channel, where the two branches of
the river are both well-defined channels and there is no dis-
parity in size, although in low water the one channel carries
all the running water, and at other times more than the other
channel, because it is shorter and has more fall.

We think that the evidence establishes the existence of this
island for a considerable length of time prior to the survey
being made of the lands on the east or west banks of the
river, and before Idaho's admission to the Union. There was
no evidence offered by the appellant in the trial court, that
even tended to establish the fact that the island in contro-
versy was at any time attached to or a part of lots 1 and 14.
On the contrary, the proof offered by appellant, clearly estab-
lished the fact that the east channel of the Salmon river was
where it now is and where it had been for many years prior
to the time appellant became the owner and went into pos-
session of lots 1 and 14; that the banks of the east channel
of the river are clearly defined; that this island is "Fast
Land," not subject to overflow; that a portion of the same
had been fenced and used, by the predecessor of appellant,
and others, for the pasturage of cattle and that for a period
of years, cordwood was cut on and sold from said island.
While it might be true that for a time the east channel of
the Salmon river between the lands of the appellant and the
island was not the main channel of the river, it was proven
by appellant that by reason of the peculiar characteristics of

the stream, the main body of water during different years ran through the east channel of the river, along which the lands of the appellant abut, eroding and cutting away a small portion of lots 1 and 14. This erosion of appellant's lands by the changing of the main body of the stream from the west to the east channel was, as appears from the record, almost imperceptible.

From all of the evidence offered by appellant, it would seem to be clearly established that an open waterway between the island and the lands of the appellant was found to exist by the first occupant of these lands, and that strenuous efforts were made to divert the main flow of the stream through the west channel of the river by the construction at the upper end of the island and at the intake of the east channel of the river of riprap earth and rock for the express purpose of preventing the water from flowing through the east channel, which undertakings were unsuccessful and all obstructions were subsequently washed out, and the waters, as formerly, flowed down through the east channel.

The evidence further shows that the island opposite lots 1 and 14 contains an area of between forty and fifty acres; that the deed from Elder to McCain and from McCain to appellant contained only 13 acres and 127 rods more or less; that the starting point in the deed is positively located, to wit: Commencing at the witness stake on the right bank of the Salmon river, and on section lines between sections 6 and 7, in township No. 21 north, range No. 22 east, Boise meridian, etc. It therefore, clearly appears that when the appellant purchased this land abutting upon the east side of the river, that there was no intention upon the part of his predecessors to convey to him any portion of the island.

Under the decisions of the supreme court of the United States, the appellant by reason of becoming the purchaser of the lands abutting upon the river would not be entitled, by paying therefor, to additional land on the island. (*Scott v. Lattig*, 227 U. S. 229, 33 Sup. Ct. 242, 57 L. ed. 490, 44 L. R. A., N. S., 107; *Horne v. Smith*, 159 U. S. 40, 15 Sup.

Ct. 988, 40 L. ed. 68; *Niles v. Cedar Point Club,* 175 U. S. 300, 20 Sup. Ct. 124, 44 L. ed. 174.)

If he were entitled to the island or any portion of it, it would be upon the theory that a riparian owner upon a navigable stream takes to the thread of the main stream. That was the doctrine announced by a majority of this court in the cases of *Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 499, 24 L. R. A., N. S., 1240, *A. B. Moss & Bro. v. Ramey,* 14 Ida. 598, 95 Pac. 513, and *Lattig v. Scott,* 17 Ida. 506, 107 Pac. 47. This latter case was appealed to the supreme court of the United States, which reversed the former decisions of this court, holding, among other things, that the error in omitting an island in a navigable stream from the field-notes and plat of the government did not divest the United States of title or interpose any obstacles to a subsequent survey of the island; that the disposal by the United States, after the admission of Idaho to statehood, of fractional subdivisions or islands in the navigable streams, carried with it no right to the bed of said rivers, save as the law of Idaho may have attached such a right to private riparian ownership on a navigable stream, and that islands in existence when Idaho became a state, did not pass to the state upon admission to statehood or come within the disposing influence of its laws, but remained the property of the United States, subject to disposal by it.

This decision was followed by this court in the case of *A. B. Moss & Bro. v. Ramey,* upon rehearing, 25 Ida. 1, 136 Pac. 608, the court holding in effect, that an island which is surrounded by well-defined channels of the stream and which island existed at the time the state was admitted into the Union and was not included in the public land of the survey, but comprised an area larger than a legal subdivision authorized under the United States land surveys, did not pass from the government to the state on the admission of the state, and did not pass to the upland or riparian proprietor by a patent to the abutting lots of a subdivision meandering the channel of the stream.

It is therefore, we think, the settled law of this state, that no title to islands, lakes or the bed of navigable streams passes to the patentees of the United States by the sale of border lots, and that the state holds the title to the beds of navigable lakes and streams below the natural high-water mark for the use and benefit of the whole people, and that the right, title or interest of riparian proprietors or owners of uplands, to such shores are determined by the laws of the state, subject only to the rights vested by the constitution of the United States.

The Salmon river is a navigable stream, and is therefore a public highway belonging to the state upon its admission to the Union, and may be used and disposed of by the state, subject only to the rights of the public in such waters and to the paramount power of Congress to control their navigation so far as may be necessary for the regulation of commerce among the states and of foreign nations. (*St. Clair County v. Lovingston,* 23 Wall. 46, 68, 23 L. ed. 59; *Barney v. Keokuk,* 94 U. S. 324, 24 L. ed. 224; *Illinois C. R. Co. v. Chicago,* 176 U. S. 646, 20 Sup. Ct. 509, 44 L. ed. 622.) In this last-named case it is held that the right of the state to regulate and control the shores of navigable waters and the land under them is supreme; that it depends upon the law of each state as to what waters and to what extent this prerogative of the state over the beds of such streams shall be exercised; that after statehood, the state holds the title to the beds of the navigable streams and may dispose of them if it desires to do so to private owners, but that no such disposition shall interfere with the rights of the general government to regulate commerce on such navigable streams, or in any manner interfere with the right to the use of the navigable lakes, rivers or streams as public highways over which every citizen has a natural right to carry commerce, whether by ships, boats or the floating of logs or lumber; having due consideration and reasonable care for the rights of individuals as well as the public in the common use of such public highways.

The cases of *Johnson v. Hurst*, 10 Ida. 308, 77 Pac. 784, *Lattig v. Scott*, 17 Ida. 506, 107 Pac. 47, *Johnson v. Johnson*, 14 Ida. 561, 95 Pac. 499, 24 L. R. A., N. S., 1240, and *Ulbright v. Baslington*, 20 Ida. 539, 119 Pac. 292, 294, are hereby overruled in so far as they conflict with this opinion.

Upon an examination of the record and the authorities applicable to this case, we are satisfied that our conclusions are not only supported by the great weight of authority, but that this case comes squarely within the rule laid down in the cases of *Scott v. Lattig, supra,* and *A. B. Moss & Bro. v. Ramey,* on rehearing, *supra.*

The trial court did not err in granting a nonsuit in this case. We have also examined appellant's second assignment of error and find that there is no merit in it.

It is therefore ordered that judgment of nonsuit in favor of respondent be and the same is hereby *affirmed.* Costs are awarded to respondent.

Sullivan, C. J., and Morgan, J., concur.