**ELLIOTT et al. v. ENGLEBRECHT et ux.**

No. 27295.   Sept. 21, 1937.

Rehearing Denied Oct. 12, 1937.

Clyde Morsey, for plaintiff in error.

William M. Thomas, for defendant in error.

WELCH, J. This is an appeal from a judgment of the district court of Ottawa county in favor of the defendants in error, the plaintiffs in that court, against the plaintiffs in error, the defendants in that court. Hereinafter the parties will be referred to as plaintiffs and defendants.

The plaintiffs in their petition allege riparian ownership of the real estate in controversy, an island in Grand river; the right to immediate possession thereof; that some title or interest to the property is claimed by the defendants, which claim is adverse to the title of plaintiffs and constitutes a cloud on plaintiffs' title. The defendants in their answer denied that plaintiffs have any legal or equitable title to the property, and claimed that title to said lands had always been vested in the defendants James W. Elliott and his grantors, and pleaded open, continuous, adverse, and notorious possession of said lands by defendant and his grantors for more than 15 years, and that any claim of plaintiffs is barred by the statute of limitations. The plaintiff filed a reply denying generally any new matter in the answer.

The defendants contend that the judgment of the lower court quieting title to the property in the plaintiffs is not sustained by the evidence and is contrary to law.

The land in controversy is an uncharted island in Grand river, commonly known as Turkey Island. The evidence discloses that the plaintiffs are the owners of a tract of land on the east bank of Grand river adjacent to Turkey Island.

It was the contention of the plaintiff that the west line of said lands, of which he is a successor in title from a Seneca allottee, is the west line of the Seneca Nation, and that the west line of the Seneca Nation was the current or thread of Grand river, and that the current or thread of Grand river at the point in question is west of Turkey Island, and that, although the patent of the Seneca allottee, plaintiffs' predecessor in title, recites an exact number of acres, to wit, 84.30 acres, it conveys the riparian ownership of Turkey Island, thereby increasing the acreage suggested in the patent and successive deeds some 30 or 40 acres.

There is no claim that this island, or any part of it, was included in the computation of the quantity of land patented to the Seneca allottee, and the patent does not mention the river as a boundary. This patent was issued by the United States government in 1892, pursuant to an Act of Congress of Feb. 8, 1887 (24 Stat. 388, 389, § 1, as amended, and § 5 [25 U. S. C. A. § 331 and note, and § 348 and note]), which provided for surveys of Indian lands held in common by the tribe as a nation, and thereafter the issuance of patents in trust to individual Indians. Although there

is no direct evidence that a survey there is no direct evidence that a survey was made in 1892, or immediately prior to that date, the patent and circumstances surrounding the issuance thereof are convincing proof that a survey was made. There is no evidence that the island in question was surveyed at the time; however, the record discloses that the island was in existence at the time of the survey of the lands patented and when the patent was issued, and that it was not a mere shifting sand bar or temporary accretion, but was primitive soil on which large trees were standing, and that there was a well-defined stream on either side. Surveys were made by the government of the meander line along the east bank of the river in 1836 and in 1874. In 1897 the government made a survey of the lands on the west or "Cherokee" side of the river, and the field notes of the government surveyor made while surveying the meander line of the west bank indicate a large island opposite section 19, which said section is located on the west bank of the river, and in township 26 north, range 24 east.

The defendants claimed ownership of Turkey Island by virtue of a deed which followed a chain of conveyances beginning with a conveyance by the Seneca Nation of the Seneca unallotted lands. The conveyance of unallotted lands by said nation in the year 1903 included, with other lands, an "island in section 19 containing 40 acres in township 26 north of range 24 east." There are two sections, each designated as section 19, in township 26 north of range 24 east. They are separate and apart one from the other, and received their designating numbers in separate and different surveys. One section 19 lies along the west bank of Grand river opposite the west side of Turkey Island, and another section 19 lies along the east bank of Grand river adjoining on the south the lands lying on the east bank of the river opposite the east side of the island. Although there is a small island opposite the section 19 on the east bank of Grand river, it was so little known and inconsequential in size as to not be confused with Turkey Island.

Unquestionably the government of the United States cannot deprive a riparian proprietor of any substantial right that passed to him under a patent to the bank of a stream, whether navigable or not. In this case, however, the question is, What was the boundary of the lands patented to the Seneca allottee from whom the plaintiff claims title? In Steinbuchel v. Lane, 59 Kan. 7, 51 P. 886, it is held that a patent for lands bordering on a stream, both banks of which were meandered by the government, without any reference to a large island therein composed of primitive soil, includes no part of the island opposite such land as an appurtenance thereof, whether the stream be navigable or not, where it separates at the head of the island into two distinct channels, constituting a well-defined stream on either side, and it is not necessary to include any part of the island to make up the quantity of land included in the patent; but at most the boundary of the land granted extends only to the middle of the thread of the channel between it and the island.

It is impossible to lay down a definite rule which will determine every case involving a question as to what passes by a grant of land bordering on a water course. Whether the island was intended to be reserved or to pass must be determined from its situation and extent at the time of the grants, and the action of the United States and the Seneca Nation. The act of Congress providing for the allotment of Indian lands held in common by the tribe to individual Indians provided only the quantity of land each individual should take, and the lands could have been conveyed by such boundaries and designations as deemed most practicable. We do not find that the facts of this case disclose any intent to convey the island to the Seneca allottee from whom plaintiffs claim title; but that the acts of the United States government and the Seneca Nation, all taken together, must be construed to amount to a reservation of the island to the Seneca Nation.

We think, at most, the plaintiffs' boundary extends only to the middle thread of the east channel of the river.

This court has frequently held that as a necessary requisite to maintaining an action to quiet title, or to remove a cloud therefrom, the plaintiff must prove that he is holder of the legal or the complete equitable title to the land involved.

The plaintiffs herein have wholly failed to prove any title or right of possession to the land involved.

The defense of the statute of limitation is presented with much apparent merit, based upon the fact that defendant and his grantors have been in open and notorious possession for more than 15 years claiming

title under the deed from the Seneca Nation specifically conveying the island. But it is not necessary that we give further consideration to those details, in view of our conclusion as to plaintiffs' proof.

This court has repeatedly held that in an action of equitable cognizance, when the judgment of the trial court is against the clear weight of the evidence, it is the duty of this court to render the judgment which ought to have been rendered, or to remand the cause to the trial court, with directions to enter such judgment. Long v. Anderson, 77 Okla. 95, 186 P. 944; Richard v. Richard, 172 Okla. 397, 45 P. (2d) 101, and Koutsky v. Park National Bank, 176 Okla. 283, 29 P. (2d) 962.

The judgment of the trial court is, therefore, reversed, and the cause remanded, with directions to enter judgment for the defendants.

OSBORN, C. J., BAYLESS, V. C. J., and CORN and HURST, JJ., concur.