**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 34714-2007**

| | | |
|---|---|---|
| HERMAN MESENBRINK and CAROL MESENBRINK, husband and wife, | ) ) ) | Coeur d'Alene, April 2009 Term |
| Plaintiffs-Respondents, | ) ) | 2009 Opinion No. 71 |
| v. | ) ) | Filed: May 29, 2009 |
| LARRY D. HOSTERMAN and SACHIKO HOSTERMAN, husband and wife; DEON HUBBARD and LOUISE HUBBARD, husband and wife, | ) ) ) ) ) ) | Stephen W. Kenyon, Clerk |
| Defendants-Appellants. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Boundary County.  The Hon. James R. Michaud, District Judge.

The judgment of the district court is <u>vacated</u> and <u>remanded.</u>

Scott W. Reed, Coeur d'Alene, for appellants.

Featherston Law Firm, Chtd., Sandpoint, for respondents.  Brent C. Featherston argued.

---

EISMANN, Chief Justice.

This is an appeal from a judgment determining the portion of lakeshore owned by a littoral landowner on a nonnavigable lake.  Because the parties and the district court applied the law applicable to navigable lakes, we vacate the judgment and remand this case for further proceedings consistent with the law applicable to nonnavigable lakes as set forth in this opinion.  We decline to award the respondents attorney fees on appeal.

**I.  FACTS AND PROCEDURAL HISTORY**

Herman Lake is a 30-acre, nonnavigable lake that is oblong in shape and runs generally on a northeast-southwest diagonal.  Herman and Carol Mesenbrink own Lot 1 in Section 28, Township 62 North, Range 3 East, Boise Meridian.  They contend that when Idaho became a

state in 1890, the property they own abutted the northwest end of Herman Lake. Larry and Sachiko Hosterman own the southern portion of Lot 2 in Section 27 which abuts the northern end of the Lake. Deon and Louise Hubbard own Lots 6, 7, 8, and 9 in Section 27 which abut the remainder of the Lake.

On May 11, 2004, the Mesenbrinks (Plaintiffs)[1] filed this action against the State of Idaho Department of Lands, the Hostermans, and the Hubbards. The Plaintiffs sought a determination that Lot 1 abutted a portion of the ordinary high water mark of Herman Lake in 1890 when Idaho became a State; that the water level in the Lake had been lowered since then; and that they own the land between their property and the current ordinary high water mark of the Lake.

The Hostermans and the Hubbards (Defendants) answered and filed a counterclaim. In response to this lawsuit, the State Board of Land Commissioners determined that Herman Lake was not navigable on July 3, 1890, when Idaho became a State, and therefore the State did not have title to the bed of the Lake. The Department of Lands filed an answer disclaiming any interest in the bed of Herman Lake on the ground that it was not navigable at the time Idaho became a state and therefore the State did not own the lake bed below the ordinary high water mark. On October 23, 2006, the Plaintiffs and the Department of Lands stipulated that the action against the Department of Lands be dismissed with prejudice on the ground that the Department had disclaimed any interest in the bed of the Lake. On October 25, 2006, an order was entered dismissing this action with prejudice against the Department of Lands.

The case was tried to the district court, and it issued its memorandum decision on March 8, 2007. It made a finding as to the ordinary high water mark of Herman Lake when Idaho became a state. Based upon that finding, the parties stipulated that the court could enter a judgment granting the Plaintiffs specifically defined property down to the current ordinary high water mark of Herman Lake based upon the theory of reliction. The stipulation also provided that the Defendants retained their right to appeal. On September 21, 2007, the court entered a judgment in conformity with the parties' stipulation, and the Defendants timely appealed.

---

[1] Herman Mesenbrink later passed away on April 21, 2006.

## II. ISSUES ON APPEAL

1. Is the district court's finding as to the ordinary high water mark of Herman Lake when Idaho became a state supported by substantial and competent evidence?

2. Are the Plaintiffs entitled to an award of attorney fees on appeal?

## III. ANALYSIS

We have previously addressed the rights of riparian and littoral landowners on navigable waters. "Under Idaho law, 'a riparian owner (on a navigable river or stream) or a littoral owner (on a navigable lake) takes title down to the natural high water mark.'" *In re Sanders Beach*, 143 Idaho 443, 453, 147 P.3d 75, 85 (2006) (quoting *West v. Smith*, 95 Idaho 550, 554, 511 P.2d 1326, 1330 (1973)). "We have held that the owner of property riparian or littoral to navigable water has the right to access such water at all points along the landowner's waterfront, and the owner may enjoin persons obstructing such access." *Sanders Beach*, 143 Idaho at 453, 147 P.3d at 85.

We have also addressed the right of the public to the use of navigable waters. "Idaho was admitted to the Union in 1890 on equal footing with its sister states in every respect. The state obtained title to all land below the high water mark of navigable waters within the state at the time of its admission based on this equal footing doctrine." *Idaho Forest Indus., Inc. v. Hayden Lake Watershed Improvement Dist.*, 112 Idaho 512, 516, 733 P.2d 733, 737 (1987) (citation omitted). That title is subject to a public trust which "preserves the public's right of use in such land and, as a result, restricts the state's ability to alienate any of its public trust land." *Id*. "The State of Idaho holds title to the beds of all navigable bodies of water below the natural high water mark for the use and benefit of the public." *Kootenai Environmental Alliance, Inc. v. Panhandle Yacht Club, Inc.*, 105 Idaho 622, 625, 671 P.2d 1085, 1088 (1983). This public use and benefit includes navigation, fish and wildlife habitat, recreation, aesthetic beauty, and water quality. *Idaho Forest Industries*, 112 Idaho at 516, 733 P.2d at 737.

The issues presented in the instant case were tried by the parties and decided by the district court based upon the law applicable to navigable waters. However, on October 25, 2006, an order was entered dismissing this action against the State, and that has become a final judgment. That order was based upon the State's contention that Herman Lake was not navigable when Idaho was admitted to the Union. Therefore, for the purposes of this litigation,

the Lake is nonnavigable. The rights of the riparian and littoral landowners on nonnavigable waters differ from those on navigable waters. The parties have not addressed the rights of littoral landowners on a nonnavigable lake.

Although the title to the beds of navigable rivers and lakes passed to the State of Idaho upon its admission to the union, the federal government retained title to the beds of nonnavigable waters. As explained by the United States Supreme Court in *United States v. Oregon*, 295 U.S. 1, 14 (1935) (citation omitted; emphasis added):

> Dominion over navigable waters and property in the soil under them are so identified with the sovereign power of government that a presumption against their separation from sovereignty must be indulged, in construing either grants by the sovereign of the lands to be held in private ownership or transfer of sovereignty itself. For that reason, upon the admission of a state to the Union, the title of the United States to lands underlying navigable waters within the state passes to it, as incident to the transfer to the state of local sovereignty, and is subject only to the paramount power of the United States to control such waters for purposes of navigation in interstate and foreign commerce. But *if the waters are not navigable in fact, the title of the United States to land underlying them remains unaffected by the creation of the new state*.

"The laws of the United States alone control the disposition of title to its lands. . . . The construction of grants by the United States is a federal not a state question." *Id*. at 27-28. "[T]he disposition of such lands [the beds of nonnavigable waters] is a matter of the intention of the grantor, the United States." *Id*. at 27. "[I]f its intention be not otherwise shown, it will be taken to have assented that its conveyance should be construed and given effect in this particular according to the law of the state in which the land lies." *Id*. (quoting *State of Oklahoma v. Texas*, 258 U.S. 574, 595 (1922)). "In construing a conveyance by the United States of land within a state, the settled and reasonable rule of construction of the state affords an obvious guide in determining what impliedly passes to the grantee as an incident to land expressly granted." *Id*. at 28.

In *Hardin v. Jordan*, 140 U.S. 371 (1891), the Supreme Court addressed the issue of whether the grantee of land riparian to a nonnavigable lake took title to the edge of the water or to the center of the lake. The grantee's patent to a fractional lot recited that the land conveyed was according to the official plat. The plat showed a meander line on that portion of the fractional lot next to the lake. In analyzing the case, the Supreme Court first held that the meander line was not intended to constitute the real boundary. *Id*. at 380-81. It then held that if

4

the federal government has not reserved any right or interest that might pass with a grant, or done anything showing an intention of reservation, the grant will be construed to have conveyed all that might pass with it. *Id.* at 383. Finally, it held, "In our judgment the grants of the government for lands bounded on streams and other waters, without any reservation or restriction of terms, are to be construed as to their effect according to the law of the state in which the lands lie." *Id.* at 384.

The *Hardin* case involved land situated in the State of Illinois. The Supreme Court determined that Illinois applied the common law with respect to land titles, the construction of deeds and grants, and the rights of riparian owners. *Id.* at 385-86. It concluded that under the common law, grantees of land riparian to nonnavigable waters take title to the center of the stream or lake and that the riparian landowner in *Hardin* had title to the center of the lake. *Id.* at 401.

In *Lattig v. Scott*, 17 Idaho 506, 107 P. 47 (1910), this Court recognized the common-law rule that riparian owners of nonnavigable waters take title to the center of the stream or lake. In *Lattig*, a riparian landowner of three fractional lots on the Snake River brought an action to quiet his title to that part of an island located between his shoreline and the middle of the river. The issue was whether his predecessor in interest had acquired title to that portion of the island when purchasing the three riparian lots from the federal government. The trial court ruled in favor of the plaintiff. On appeal, this Court stated, "We have consequently adopted the common-law doctrine that has been uniformly applied everywhere the common law prevails on the subject; that is, whether a fresh water stream be navigable or nonnavigable in fact, the riparian proprietor takes title *ad filium aquae* [to the thread of the channel]." 17 Idaho at 518, 107 P. at 53. It therefore affirmed the trial court's holding that the riparian landowner acquired title to that portion of the island situated between the middle of the river and his shoreline.

The case was then appealed to the United States Supreme Court, which reversed the holding that the island belonged to the riparian landowner. The Supreme Court held that although Idaho took title to the bed of the Snake River, the island was not part of the bed. It remained the property of the United States and subject to disposal under its laws. *Scott v. Lattig*, 227 U.S. 229, 244 (1913). In deciding the case, the Supreme Court quoted from *St. Paul & Pacific R. Co. v. Schurmeir*, 74 U.S. 272, 288-89 (1868) as follows:

5

> [T]he court does not hesitate to decide that Congress, in making a distinction between streams navigable and those not navigable, intended to provide that the common law rules of riparian ownership should apply to lands bordering on the latter, but that the title to lands bordering on navigable streams should stop at the stream, and that all such streams should be deemed to be, and remain public highways.

*Scott v. Lattig*, 227 U.S. 229, 242 (1913).

In *Callahan v. Price*, 26 Idaho 745, 755, 146 P. 732, 735 (1915), this Court overruled that portion of *Lattig v. Scott* and three other opinions[2] which held that riparian landowners of navigable waters owned to the center of the river or lake. It did not, however, overrule that portion of those opinions which stated, in accordance with the common law, that the owner of land riparian to *nonnavigable* water takes title to the center of the stream or lake. We affirm that the common law continues to apply in that situation. Indeed, if the common law did not apply, there would be no law that is applicable since there is no contrary law in this state on that issue.

In the case of a nonnavigable lake, the littoral landowners take title ratably to the bed of the lake, with the manner in which the boundary lines are drawn dependent upon the shape of the lake. 78 Am. Jur. 2d *Waters* § 304 (2002). With respect to a circular lake, the boundary lines are drawn from the ends of the littoral owners' respective meander lines to a point in the center of the lake. *Ulbright v. Baslington*, 20 Idaho 539, 544, 119 P. 292, 293-94 (1911), *overruled on other grounds by Callahan v. Price*, 26 Idaho 745, 755, 146 P. 732, 735 (1915). If the lake is oblong, then the lake bed is divided similar to a river along its sides with converging lines only required at its two ends. *Ulbright,* 20 Idaho at 545, 119 P. at 294.

## A. Is the District Court's Finding Regarding the Ordinary High Water Mark of Herman Lake when Idaho Became a State Supported by Substantial and Competent Evidence?

The Defendants challenge on appeal the district court's finding as to the historical ordinary high water mark of Herman Lake. Because Herman Lake was not navigable when Idaho became a state, the land owned by the respective parties is not based upon the ordinary high water mark of the lake. Instead, it is based upon the construction of the federal grants. As

---

[2] The three other opinion were *Johnson v. Hurst*, 10 Idaho 308, 77 P. 784 (1904); *Johnson v. Johnson*, 14 Idaho 561, 95 P. 499 (1908); and *Ulbright v. Baslington*, 20 Idaho 539, 119 P. 292 (1911).

will be shown, the grant to the plaintiffs' predecessor included the land located between the meander line of his patent and the water and it also included a portion of the lake bed.

When the government plat by which lands were conveyed indicates the existence of a meandered lake, there are two legal propositions that apply. As stated in *Lee Wilson & Co. v. United States*, 245 U.S. 24, 29 (1917) (citations omitted), they are as follows:

> First. Where in a survey of the public domain a body of water or lake is found to exist and is meandered, the result of such meander is to exclude the area from the survey and to cause it as thus separated to become subject to the riparian rights of the respective owners abutting on the meander line in accordance with the laws of the several states.
> Second. But where upon the assumption of the existence of a body of water or lake a meander line is through fraud or error mistakenly run because there is no such body of water, riparian rights do not attach because in the nature of things the condition upon which they depend does not exist and upon the discovery of the mistake it is within the power of the Land Department of the United States to deal with the area which was excluded from the survey, to cause it to be surveyed and to lawfully dispose of it.

In the instant case, there is no contention that the second proposition applies. It is undisputed that Herman Lake existed at the time of the government survey in 1899. Thus, the first proposition is applicable. The land encircled by the meander lines around Lake Herman was not expressly granted by the federal government. It was impliedly conveyed to the patentees of the lots abutting the Lake.

This Court applied the holding in the *Lee Wilson & Co.* case in *Stroup v. Matthews*, 44 Idaho 134, 255 P. 406 (1927). In *Stroup*, the plaintiff was granted by federal patent two fractional lots that, according to the official plat, were meandered by and adjoined the bank of the Snake River. The defendants later determined that there was considerable land between the meander lines of the plaintiff's lots and the river, and they asked the federal government to resurvey that land. It did and created two additional lots, which the defendants homesteaded. The plaintiff then brought an action seeking to quiet his title in the land homesteaded by the defendants. The trial court granted judgment in favor of the plaintiff, and the defendants appealed. This Court affirmed the judgment, holding that the government patent conveyed to the plaintiff all of the land between his meander line and the river. In so holding, this Court relied upon both *Lee Wilson & Co. v. United States* and *Johnson v. Hurst*, 10 Idaho 308, 77 P. 784

7

(1904), *overruled on other grounds by Callahan v. Price*, 26 Idaho 745, 755, 146 P. 732, 735 (1915).

In *Johnson v. Hurst*, the plaintiff acquired by federal patent two fractional lots that contained 111.38 acres and were bounded on the south side by the Snake River, according to the official government plat. The meander line of the government survey on the south side of those lots went along the top of a bench near its edge rather than along the bank of the river. There were at least 160 acres of land between that meander line and the river. The defendant attempted to take possession of a portion of that land, and the plaintiff brought an action for quiet title. The trial court ruled that the plaintiff only owned to the meander lines of his lots, and he appealed. This Court reversed, holding that the plaintiff's grant from the federal government included all of the land between the meander lines of his lots as shown on the official plat and the river. The Court stated that "the grantee to lots or fractional subdivisions abutting on the meander line takes title to the stream." 10 Idaho at 323, 77 P. at 790.

Likewise, we held in *Ulbright v. Baslington*, 20 Idaho 539, 543, 119 P. 292, 293 (1911), *overruled on other grounds by Callahan v. Price*, 26 Idaho 745, 755, 146 P. 732, 735 (1915), that where the official plat of the grant from the federal government showed a meander line of a lake as a boundary, the landowner took title to the land between the meander line and the water. In *Ulbright*, the appellant's predecessor had received a grant from the federal government to fractional lots located in section 6, and the respondent's predecessor had received a grant from the federal government to fractional lots located in section 7. The official plat showed that a portion of the southern boundary of appellant's land was a meander line of a lake and that the meander line coincided with the line between sections 6 and 7. The respondent contended that because the section line and the meander line coincided, the appellant could not own any land in section 7. This Court disagreed, stating:

> This position would be correct if the south boundary line of appellant's property were only a section or subdivision line, but it is more than that. It is a section line and a meander line and so appears from the official plat, and likewise upon the field-notes as the same were returned by the surveyor to the surveyor general's office. *This was a meander line of a body of water, and it follows that the patentee to the lands bounded by this meander line is a riparian proprietor, and he is subsequently entitled to take to the water.*

20 Idaho at 543-44, 119 P. at 293 (emphasis added).

*Stroup v. Matthews*, *Johnson v. Hurst*, and *Ulbright v. Baslington* all held that the patentee of property bounded by a meander line is a riparian landowner and takes title to land described in the patent and to the land located between the meander line and the water. The common law recognized in *Lattig v. Scott* and *Hardin v. Jordan* holds that the patentee of land riparian to a nonnavigable body of water takes title to the center of the bed of the stream or lake. Thus, the patentee of property bounded by the meander line of a nonnavigable lake takes title not only to the land described in the patent but also to the land between the meander line and the water and to a ratable portion of the lake bed.

In the instant case, it appears from the surveyor's notes and the official plat that all of the lands surrounding Herman Lake were surveyed by the United States. The federal government conveyed the lands surrounding Herman Lake, and there is nothing indicating that it reserved any interest in the Lake. The grant from the federal government to the Plaintiffs' predecessor stated that the land conveyed included "lot one . . . according to the official plat of the survey of the said land." The official plat showed a meander line along a portion of the east boundary of lot one. In construing the intent of that grant, the conveyance of lot one to Plaintiffs' predecessor included the land from the meander line of lot one to the water of Herman Lake and a portion of the lake bed. Because the boundary lines are drawn from the ends of the meander lines to the middle of the lake, *Ulbright v. Baslington*, 20 Idaho 539, 543, 119 P. 292, 293 (1911), the ordinary high water mark of the lake need not be determined in order to draw those boundary lines.

Since the State of Idaho was not granted ownership of the beds of nonnavigable waters, *United States v. Oregon*, 295 U.S. 1, 28-29 (1935), the public trust doctrine does not apply to those waters, *Idaho Forest Industries, Inc. v. Hayden Lake Watershed Improvement District*, 112 Idaho 512, 516, 733 P.2d 733, 737 (1987) ("it is clear that the public trust arises only in land below the natural high water mark of navigable waters"). Likewise, the landowners along the shore do not have the littoral rights of landowners abutting a navigable lake. As stated in 78 Am. Jur. 2d *Waters* § 41(2002):

> [I]n the case of a nonnavigable lake or pond where the land under the water is owned by others, no littoral rights attach to the property bordering on the water and that an attempt to exercise any such rights by invading the water is as much a trespass as if an unauthorized entry were made upon the dry land of another.

9

In this case, the parties stipulated to a judgment granting the Plaintiffs specifically defined property down to the current ordinary high water mark of Herman Lake based upon the theory of reliction according to the "long lake method." That judgment must be vacated because the Plaintiffs are also entitled to a portion of the lake bed as provided in *Ulbright v. Baslington*.

**B. Are the Plaintiffs Entitled to an Award of Attorney Fees on Appeal?**

The Plaintiffs seek an award of attorney fees on appeal pursuant to Idaho Code § 12-121. "They could recover attorney fees on appeal under that statute only if the appeal were brought or pursued frivolously, unreasonably, or without foundation." *Cecil v. Gagnebin*, 146 Idaho 714, 718, 202 P.3d 1, 5 (2009). Although the Plaintiffs have prevailed on appeal, they have not done so based upon arguments they made on appeal. We therefore decline to award the Plaintiffs attorney fees on appeal.

## IV. CONCLUSION

The judgment of the district court is vacated and this case is remanded for further proceedings that are consistent with this opinion. We award the respondents costs, but not attorney fees, on appeal.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.