[Civ. No. 1927.   Third Appellate District.—April 2, 1919.]

## THE TRUCKEE RIVER GENERAL ELECTRIC COMPANY (a Corporation), Appellant, v. JOHN ANDERSON et al., Defendants; DUANE L. BLISS, Jr., et al., Respondents.

[1] ADVERSE POSSESSION—ESSENTIALS—CONSTRUCTION OF CODE.—For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, it is not necessary, under section 325 of the Code of Civil Procedure, that the land shall have been "protected by a substantial inclosure" or "usually cultivated or improved" for any specific period of time, but only that it shall have been occupied and claimed and the taxes paid for the period of five years continuously.

[2] ID.—RECOVERY OF POSSESSION OF REAL PROPERTY—STATUTE OF LIMITATIONS.—An action for the recovery of the possession of real property is barred by section 318 of the Code of Civil Procedure where neither the plaintiff nor its predecessor "was seised or possessed of the property in question, within five years before the commencement of the action."

APPEAL from a judgment of the Superior Court of Placer County. William M. Finch, Judge. Affirmed.

The facts are stated in the opinion of the court.

John W. Preston and Ed. F. Jared for Appellant.

Raglan Tuttle, Tuttle & Tuttle, W. J. Prewett and Prewett & Chamberlain for Respondents.

HART, J.—Plaintiff commenced the action against John Anderson and a number of others to quiet its title to a tract of land in Placer County, containing about fifty-four acres. As to all of the defendants except Bliss and Ferris the action was either dismissed by plaintiff or default was taken against them for failure to appear. The decree of the court was in favor of plaintiff for all the land mentioned in the complaint, except that defendant Bliss was found to be the owner of a parcel thereof amounting to about one-fifth of an acre and defendant Ferris of a parcel thereof amounting to about seven-eighths of an acre.

It is stated in appellant's brief: "During the pendency of the action, the rights of the plaintiff were acquired by the United States of America, and this appeal is now prosecuted by the government."

The land in controversy is situated on Lake Tahoe and along the bank of the Truckee River near its source, which, throughout the record and in the briefs is spoken of as the "mouth of the Truckee River."

Each of the defendants, Bliss and Ferris, claimed title by adverse possession. The findings of the court were in their favor, and it was also found that the action against defendant Bliss was barred by the provisions of section 318 of the Code of Civil Procedure.

There was documentary evidence received tending to prove title in the plaintiff corporation to the fifty-four acres, which included the two parcels awarded to Bliss and Ferris, the inception of said title being a patent from the United States to Central Pacific Railroad Company, dated April 18, 1870.

### THE FERRIS TITLE.

C. B. Ferris testified that he had been living on the property claimed by him since 1896. The tract has a frontage of about 150 feet on the lake front, and it runs back from the lake about eighty feet. The witness testified: "The improvements on the property are a house and a boat-house and a small garage on the hill above the house, and I have a wharf, a boat landing. The property that would be between the house and boat-house and wharf and the county road, I have used for a little of everything; piling wood, lumber, and whatever became necessary to put in there. . . . below the wharf I have a toilet and outhouse. The toilet is probably

forty feet from my southwest line, and the ground in that distance I have used for a little of everything—storage, hauling boats, boat repairing.'' The witness built a fence around the property, either in 1907 or 1908—he was pretty positive it was in June, 1908—and it has been maintained ever since. He stated that he had resided continuously on the property, winter and summer.

It was stipulated at the trial that for the years 1908 to 1912, both inclusive, the taxes on the whole property were assessed to and paid by appellant, and that the parcel claimed by Ferris was assessed to him and the taxes were paid by him, during the same period of time.

It is contended by appellant that as Ferris did not occupy the land under color of title but was a mere squatter, he would be subject to the provisions of section 325 of the Code of Civil Procedure, and must prove that the land "has been protected by substantial inclosure,'' and "has been usually cultivated or improved,'' and it is claimed that neither of these requirements has been met.

The complaint was filed on October 3, 1912, which was four years and four months after the construction of the fence in June, 1908.

Section 325 of the Code of Civil Procedure, as enacted in 1872, read as follows: "For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only:

"1. Where it has been protected by a substantial inclosure;

"2. Where it has been usually cultivated or improved.''

In 1878 (Stats. 1877–78, p. 99), the section was amended by re-enacting the above language and adding thereto the following: "Provided, however, that in no case shall adverse possession be considered established under the provision of any section or sections of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county, or municipal, which have been levied and assessed upon such land.''

[1] It will be noted that, as originally enacted, there was no provision in the section that the land in dispute should

have been (1) "protected by a substantial inclosure," or (2) "usually cultivated or improved" for any period of time, nor did the amendment change those terms of the section. The five-year period provided by the amendment applies only to the occupancy and claim of the land and to the payment of taxes.

In *Gray* v. *Walker*, 157 Cal. 381, [108 Pac. 278], our supreme court said: "The requirement of the statute that the land be 'usually cultivated or improved' means that it should be cultivated or improved in the manner or to the extent usual in the case of similar property. (*Allen* v. *McKay*, 120 Cal. 322, [52 Pac. 828]:) If so improved, it is not necessary that it should be either cultivated or inclosed. (*Daniels* v. *Gualala M. Co.*, 77 Cal. 300, [19 Pac. 519].)" In the case of *Allen* v. *McKay*, above cited, it was held that an instruction was properly given which stated that: "A piece of property is said to be usually improved, or improved in the usual manner, when it is improved as similar property is improved," and in the Daniels case it was held that the right of way of a railroad company, "improved in the usual manner of railroads with reference to their roadbed and right of way," constituted adverse possession, "though the land was not protected on all sides by a substantial inclosure."

Inasmuch as section 325 does not require that the land should be inclosed for the period of five years before the commencement of the action, testimony tending to show that it was inclosed for a shorter period will be admitted as a fact tending to show possession.

As it was stipulated that defendant Ferris, for a period of five years prior to the commencement of the action, had paid the taxes assessed against the parcel of land claimed by him, and in view of the testimony showing acts of possession on his part, we conclude that the judgment in his favor should be affirmed.

### THE BLISS TITLE.

In 1879 or 1880, one John Branch, a fisherman on Lake Tahoe, squatted on the property claimed by defendant Bliss, and built a house upon it. He lived upon it until 1900. In 1881 or 1882 he built a fence with cedar posts around the tract "for the purpose of having a garden; he only kept his garden two or three years; the ground was not very good"— as testified by a witness. There was also a wood-shed and a

boat-house built upon the property. The place was commonly known in the neighborhood as "The Johnnie Branch Place," and was reputed to be his property. Branch died some time between 1900 and 1904.

In 1900, J. H. Pomin bought from Branch the house and his boats—"everything he had—lot and house," Pomin testified. This transaction was evidenced by the following document, which was admitted in evidence over plaintiff's objection:

"This is to certify that I, Jno. Branch, do this third day of August, 1900, for the sum of one hundred and fifty ($150.00) dollars, which money has been paid me this day, and in consideration of which sum, I do transfer and sell to J. H. Pomin all right, title and interest in the house-boats, fixtures and whatsoever property is contained in said building or buildings on lot occupied by said buildings. The said property being located at the mouth of the Truckee River (West bank). This includes each and all property of whatsoever description formerly owned by me, (Jno. Branch).

"Witness my signature.

"(Signed)   John Branch.

"Witness: H. W. Wills.

"Tahoe City, Cal., August 3d, 1900."

On the fourteenth day of November, 1912, H. W. Wills went before a notary public and acknowledged that John Branch had signed and executed said instrument.

Pomin testified that when he bought the place he had it rented for a couple of years; that the renter came on the place in 1901 or 1902 and stayed during one summer; that it was vacant for three or four years.

W. S. Bliss, a civil engineer, made a survey of the Branch property for his brother, the defendant Bliss, in 1907 or 1908, seven or eight years before the trial. He stated that he followed the outside boundaries of the land as shown by the old fence; that there was a fence there but he did not know whether it was all standing or not.

The defendant, Duane L. Bliss, Jr., was sworn as a witness and identified a deed, executed June 13, 1907, and acknowledged June 20, 1907, by J. H. Pomin, which conveyed to the witness "Lot known as the John Branch property, County of Placer, State of California, located at the mouth of the Truckee river, west bank, together with the buildings on said

lot and all fixtures or contents therein." Over the objection of the plaintiff, this deed was admitted in evidence.

The witness testified: "At the date of this deed I was living at Tahoe. I personally took possession of this property, and had an Italian carpenter that worked at the Tavern. He and his family lived there; paid me five dollars a month. I haven't any way of getting the exact record of when he went into that property, but some time during the summer of 1907. He was there five or six or eight months. I think the next winter after he went in, after he ceased to occupy it, William Gifford occupied it in the spring of 1908. Gifford occupied it as a tenant. He or his people continued there until this spring. [The trial was had on October 18, 1915.] It was April, I believe, when he was ejected. I brought a suit in ejectment or unlawful detainer. During the time I have been in possession of this property, either by myself or through my tenants, I have always claimed it as my own absolutely. There has never been any interruption of my occupation or possession of it. I have paid the taxes upon the property ever since I have had it."

Tax receipts, showing the payment of taxes by the witness for the years 1908 to 1912, both inclusive, were received in evidence. The assessment for the year 1908 was for "Lot Tahoe." For 1909, 1910, 1911, and 1912, the assessment was for "Lot at Mouth of Truckee River." In the last two receipts there is also included another lot owned by Mr. Bliss. He testified that during the time covered by the first three receipts the lot in question was the only property he owned at Tahoe.

It was shown by the assessment-roll of Placer County that, in 1907 and 1908, the fifty-four acres, together with dam and water rights, were assessed to M. F. Vandall, the grantor of the plaintiff. In the years 1909, 1910, 1911, and 1912, the property was assessed to the plaintiff, reference to the dam and water rights being omitted from the assessments of 1911 and 1912. The property claimed by defendant Bliss is a portion of lot 9 of section 7, township 15 north, range 17 east, and the government plat shows that the lot contained 17.38 acres and that it is situated in the northwest quarter of the northeast quarter of said section 7. The assessment to plaintiff and its grantor in the above-named years, so far as the

property in dispute is concerned, covered "The fractional N. W. ¼ of the N. E. ¼ of section 7," etc.

[2]    Section 318 of the Code of Civil Procedure reads as follows: "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seised or possessed of the property in question, within five years before the commencement of the action."

A similar statute of Minnesota was considered in *Seymour v. Carli*, 31 Minn. 81, 16 N. W. 495, and the court said: "The title of the owner of a freehold estate is described by the terms 'seizin,' or 'seizin in fee'; yet in a proper legal sense the holder of the legal title is not seised until he is fully vested with the possession, actual or constructive. When there is no adverse possession the title draws to it the possession. . . . An actual possession in hostility to the true owner works a disseizin, and if the disseizor is suffered to remain continuously in possession for the statutory period, the remedy of the former is extinguished."

The facts in this case, as above detailed, show that it was impossible that plaintiff could have been "seised or possessed of the property in question, within five years before the commencement of the action," and sustain the finding of the court below that plaintiff's cause of action is barred by the provisions of said section. Consequently, it becomes unnecessary to consider the points raised by appellant in its attack upon the judgment.

The judgment is affirmed.

Buck, P. J., *pro tem.*, and Burnett, J., concurred.