(No. 4830. March 26, 1928.)

M. W. JOHNSON, Respondent, v. LILLIAN DUNN, JESS DUNN and the COAST LUMBER COMPANY, a Corporation, Appellants.

[266 Pac. 1099.]

Lillian Dunn and Jess Dunn, *per se.*

Barber & Barber, for Appellant Coast Lumber Co.

E. M. Wolfe and Cleon Wilkins, for Respondent.

T. BAILEY LEE, J.—This is a suit to quiet title to an irregular strip of land lying between the resurveyed north boundary line of lots 2, 3, 4 and 5, section 9, township 9 south of range 15 E. B. M., and the rimrock of Snake River. As shown by the original field-notes and plat of the 1881 government survey, these lots extended to the south bank of Snake River, the meander line closely following the contour of the river along the rimrock, and no land being shown between the rimrock and the river, whereas there was in fact a considerable body of such land. This survey was approved in 1884; and in August, 1907, the government issued its letters patent for said lots to Alma H. Howe, plaintiff's predecessor. The patent was recorded April 26, 1909. In February, 1909, the said patentee deeded to C. J. Hahn, trustee, all the land lying between the rimrock and the water line, describing the same as that portion of said lots 2, 3, 4 and 5 lying between the bank of Snake River on the north and the rimrock traverse on the south. Through a series of mesne conveyances carrying the same description this land was later deeded to the defendant, Lillian Dunn, in June, 1919, who the following year mortgaged it to E. B. Williams, describing it as aforesaid. In the meantime, October 28, 1915, the plaintiff through mesne conveyances became the owner of the remaining portion of said lots lying between the south boundary thereof and the rimrock on the north.

In 1915 the government ordered a resurvey of said section 9, the field-notes and plat of which were approved April

17, 1918. By this survey the meander line as originally platted along the rimrock was bodily moved south a substantial distance; and the land lying between it as then located and the new meander was platted into lots 7, 8, 9, 11, 12, 13 and 14 of section 9, and lot 12 of section 4 of said township, the strip in litigation here being that portion of lots 11, 12, 13 and 14 which lies between the rimrock and the meander line as finally laid by the second survey. A clear conception of the situation may be had by reference to the following drafts of the respective surveys.

RESURVEY OF 1918
Scale. 1 Inch = 20 Chains

SURVEY OF 1881
Scale. 1 Inch = 20 Chains

The defendant, Lillian Dunn, then being uncertain of her title to the land theretofore purchased by her, sought patent according to the new survey, but finding that patent would be denied unless she also applied for the portion of lots 11, 12, 13 and 14 lying south of the rimrock, she filed in the Land Office on December 3, 1920, her application to purchase the entire newly platted area comprising her original purchase and the strip in dispute. Formal notice of her appli-

cation was served upon plaintiff, requiring him to file affidavit of protest on or before a day certain. He filed no protest nor made any appearance in opposition; and on September 12, 1921, the applicant received full patent, recording the same December 31, 1921.

On April 11, 1924, respondent plaintiff commenced this action. A second amended complaint was later filed, the only defendants now involved being the defendant, Lillian Dunn, her husband, Jess, and the Coast Lumber Company, holder by assignment of a mortgage executed to the King Motor Company by the Dunns, covering the disputed strip. Issue was joined by these defendants, and the Coast Lumber Company cross-complained for the foreclosure of its mortgage. The court found for the plaintiff, quieted his title against all defendants, denied the lumber company foreclosure but awarded it a personal judgment against the Dunns. All three defendants have appealed. Of the numerous errors assigned, a consideration of two only will be decisive.

Appellants contend that the court erred in finding that respondent's land, lots 2, 3, 4 and 5, extends from their south boundary line to the northern rimrock as delimited by the 1881 meander, in that such meander line was flagrantly false and fictitious, both as to courses and distances, and there being no body of water at or near the same as laid, such line was one of boundary only, and, when corrected by the second survey, constituted respondent's true northern boundary. There is no question of the correctness of the proposition that where a meander purports to show a stream or body of water which in fact neither exists nor is at or reasonably near such meander, the latter is merely a line of boundary and not a sinuosity. (*Stroup v. Matthews,* 44 Ida. 134, 255 Pac. 406, quoting as authority, *Wilson & Co. v. United States,* 245 U. S. 24, 38 Sup. Ct. 21, 62 L. ed. 128, and the numerous authorities cited.) This rule might be applicable here, were respondent claiming lands lying between the originally established meander line and the river's edge. But he is not claiming such lands. He has

accepted the old meander line as his line of boundary, and in fact tied himself to that boundary when he took his deed with constructive notice at least that his predecessor six years before had deeded to Hahn all land north of the rimrock. The imminent question is: Can a line established by an approved government survey, after issuance of patent thereunder, be interfered with for any reason whatever? In none of the cases cited by appellants have we found an instance where a false or fraudulent meander line has been disturbed after issuance of patent, nor have we been able to discover such an instance elsewhere. There are many cases where after issuance of patent the government by resurvey has determined and disposed of lands actually lying between the water line and the originally established meander, but the meander itself was not corrected. In other words, the falsity corrected was not that of the line established, but the falsity of contiguous water delineated instead of land, the line remaining as first laid. That an established line cannot be disturbed after patent, the United States supreme court has repeatedly declared, the most recent announcement being that in *United States v. State Investment Co.*, 264 U. S. 206, 44 Sup. Ct. 289, 68 L. ed. 639, where after recognizing the right of the government to correct surveys through the Land Department ''while the land is subject to its supervision, and before it takes final action,'' Justice Sanford said:

''This power . . . . is 'subject to the necessary and decided limitation' that when it has once made and approved a governmental survey of public lands, and has disposed of them, the courts may protect the private rights acquired against interference by corrective surveys subsequently made by the Department.''

By way of emphasis he announced in conclusion:

''A resurvey by the United States after the issuance of a patent does not affect the rights of the patentee; the government, after conveyance of the lands, having 'no jurisdiction to intermeddle with them in the form of a second survey.' ''

When the survey of 1881 was approved, it became unassailable by collateral attack in controversies between individuals. (*Russell v. Maxwell Land Co.*, 158 U. S. 253, 15 Sup. Ct. 827, 39 L. ed. 971.) Even, in *United States v. State Investment Co., supra,* where the government was a litigant, it was held that surveys of 1882 were inadmissible to impeach a former approved survey of 1860 under which private rights had already accrued. It would seem conclusive that the Land Department was wholly without jurisdiction to disturb the meander line laid in 1881, and that such line cannot be attacked collaterally as is sought to be done here. But, were this a proceeding direct, is there sufficient evidence to impeach the correctness of the meander line as originally laid? No testimony was introduced on either side as to the correctness or incorrectness of the respective surveys of the meander. Both bear the approval of the Department. If it be assumed that the latter survey is correct, the former is flagrantly incorrect as to distance. But, what is there in the record to warrant a finding that the last engineer's computations of distance were more accurate than those of the first? Conceding, for argument's sake, that the actual distances north to the rimrock from the southeast and southwest corners of section 9 are greatly in excess of those laid by the 1881 survey, this in itself is not sufficient, if the course of the old meander line can be determined by reference to natural objects. It is the general rule, when identifying boundary lines, that fixed and known monuments and objects called for in a deed of conveyance must prevail over courses and distances. (*Jorgenson v. McAllister,* 34 Ida. 182, 202 Pac. 1059; *United States v. State Investment Co., supra; Bell v. Skillicorn,* 6 N. M. 399, 28 Pac. 768; *Beltz v. Mathiowitz,* 72 Minn. 443, 75 N. W. 699.) *Bramblette v. Howard,* 29 Ky. Law Rep. 497, 93 S. W. 902, is a case closely in point, where a patent describing land by courses and distances referred to a natural monument as follows: "Thence north . . . . 650 poles to a stake on Poor Fork." The distance given would have carried the line across the stream; and the patentee

contended that the distance should control, but the court said:

"It has been adjudicated by this court time and again that courses and distances must give way to natural objects, and in this particular case the distance of 650 poles to a stake on Poor Fork must yield to the natural object, namely, the Poor Fork."

The 1881 field-notes recite that the engineer ran a line from the southeast corner of section 9 "north to the left bank of Snake River, 600 feet above the water," and set a meander corner consisting of a lava stone 16x7x5 inches, eleven inches in the ground, after which he crossed the river and established a point a total distance from said southeast corner seventy chains "to the right bank of Snake River, 650 feet above the water"; that he ran a line from the southwest corner of said section 9 north "to the left bank of Snake River, 750 feet above the water," and set as a meander corner a lava stone 8x8x6 inches, five inches in the ground. After delimiting these side-lines, the notes describing the meander recite that after the engineer arrived at the meander corner of sections 9 and 10, he proceeded "Thence in section 9 . . . . along high bluff, west, etc., to meander corner of sections 8 and 9." It was stipulated by the parties that "the canyon walls, in regard to the rimrock, were situated in 1881 as they are now and have been at all times since," and that there is no other formation in the vicinity that can be called a high bluff except the one rimrock. According to these notes, the entire meander line was run along a high bluff from the east meander corner 600 feet above the water to the west meander corner 750 feet above the water. The high canyon walls are not disputed; the bearings and distances of the meander line itself are not disputed. The only fault found is that the meander corners limiting such line were falsely represented too far north, and that the line, correct in all other respects, should be drawn south to correspond with distances given by the 1881 field-notes. It cannot be questioned that the field-notes declared the entire meander line

to have been run on a high bluff, admittedly the rimrock constituting the canyon wall, such a natural monument or object as must perforce prevail over distances incorrectly given. We think the evidence supports the court's findings in this regard.

Appellants' second contention is that respondent is estopped by his failure to protest Lillian Dunn's application for patent; that by so doing she was permitted to spend her money, relying upon his acquiescence, and the defendant lumber company led into purchasing its mortgage. Respondent owed Lillian Dunn no duty. When she purchased the land north of the rimrock in 1919, she understood it to be a part of lots 2, 3, 4 and 5 theretofore patented to another, and that the land south of the rimrock, being a part of such lots, was claimed by someone other than herself. By her pleadings she admitted plaintiff's possession, and she admitted seeing alfalfa growing on the strip possessed.

And knowing all this, she instituted a hostile proceeding in the land office which was without jurisdiction to take any action affecting respondent's rights. The notice directing him to protest was a nullity requiring no response. Nor did respondent owe any duty to defendant lumber company or its assigning privies. It nowhere appears that he was ever cognizant of their contemplated transactions, and until then he was under no obligation to proclaim or defend a title the United States had originally assured his predecessors by solemn record.

Judgment affirmed. Costs to respondent.

Wm. E. Lee, C. J., and Budge and Taylor, JJ., concur.

Petition for rehearing denied.