(No. 23859.—

JOHN H. WILLIAMS *et al.* Appellees, *vs.* ELIZABETH WILLIAMS SWANGO *et al.* Appellants.

*Opinion filed February 12, 1937—Rehearing denied April 8, 1937.*

SPRINGER & SPRINGER, VAN SELLAR & McCLAIN, and RILEY McCLAIN, for appellants.

ACTON, ACTON & BALDWIN, (W. M. ACTON, and JOHN M. BOOKWALTER, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellees filed a bill in the circuit court of Edgar county seeking partition of a tract of 328.4 acres of land situated in that county. Appellants, by their answer, denied that appellees had any interest in the land. The chancellor sustained the averments of the bill and granted partition. Appellants have brought the cause here for review.

The facts out of which this suit arises are as follows: Ann M. Williams, a widow, the mother of appellees and appellants, owned large tracts of land in Edgar and Piatt counties. On February 8, 1907, she entered into an agreement with the appellees by which she contracted to sell each of them 500 acres of land in Edgar county in consideration of their each paying her $500 per year during her life-

time and assuming and paying certain mortgages on the land. By this contract it was provided that each of the sons was to have the lands described in his contract at the option of the mother, and that if she did not convey the land to them in fee simple before her death, they were to have it at the time of her death. In December of that year she deeded to each of appellees, Frank C. and John H. Williams, the lands involved in his contract. So far as the record shows she did not consult them at the time she made the deeds concerning the terms thereof. The record also shows that each carried out his agreement to pay the mortgages and the sum of $500 per year during the lifetime of his mother.

Ann M. Williams had six children, five of her own and one by adoption: Frank C., John H., Phillip H., Martha Ann Barnes, Elizabeth Williams Swango, and Byron P. Williams, the adopted son. On February 3, 1911, she made deeds as follows: To P. H. Williams, in fee, 130 acres of the Edgar county land, a residence property in Paris, Illinois, and certain lands in Piatt county and in the State of Kansas; to Elizabeth Williams Swango, in fee, 103.3 acres in Edgar county, and a tract of 233.9 acres in that county, for life, with the remainder to the heirs of the body of Elizabeth; to Martha Ann Barnes she deeded 51 acres in Edgar county, in fee, and 288.4 acres in that county, for life, with the remainder to the heirs of her body, and on December 24, 1919, deeded to Martha an additional 40 acres of land in Edgar county, for life, with remainder to the heirs of her body. This tract of 328.4 acres is the subject matter of this suit. On February 3, 1911, she deeded to Byron P. Williams 320 acres of land in Piatt county, for life, with the remainder to the heirs of his body. All deeds of February, 1911, or later, reserved a life estate, and were put in escrow to be delivered on the death of the grantee. Ann M. Williams died intestate in October, 1923, leaving the above named children as her only heirs-at-law.

Subsequent to the filing of this suit, and prior to the hearing thereof, Frank C. Williams died, and Elizabeth Ann Williams, his sole heir-at-law, was substituted.

Martha Ann Barnes, to whom the 328.4 acres of land in Edgar county were deeded, died November 12, 1933, never having had any children. The deed to her, having been for life with remainder to the heirs of her body, the reversion remained in the grantor, subject to the birth of issue to Martha, and on her death descended to the heirs-at-law of Ann M. Williams.

Appellants base their denial of appellees' interest in that tract of land on the wording of the deeds by which Ann M. Williams conveyed the land to them. The deed to Frank C. Williams contained the following clauses: "The above described lands are hereby conveyed to said Frank C. Williams as and for his entire interest in and share of all the property of whatsoever nature or kind (real, personal and mixed) of which the grantor herein, Ann M. Williams, may die seized and possessed, and the said Frank C. Williams in accepting this deed and the lands above described and hereby conveyed, accepts the same as and for his entire interest in and share of all of the property of whatsoever nature or kind (real, personal and mixed) of which said Ann M. Williams may die seized and possessed." The deed to John H. Williams was identical except as to the name of the grantee.

Appellee, John H. Williams, was appointed administrator of the estate of Ann M. Williams and inventoried certain lands in Edgar county, and in the State of Texas, which the deceased had not, in her lifetime, conveyed. On a hearing to fix the inheritance tax, he testified that he and his brother Frank received their deeds and went into possession in December, 1907, and had possession thereafter; that the consideration for the land conveyed to them was one dollar per acre per year, during the lifetime of their mother, and the payment of a balance of $2000 on a mort-

gage on the land. He also testified that the deeds he and Frank received contained a statement about their waiving any distributive share in the estate of Ann M. Williams, and that there remained but four heirs to that estate.

Appellants, by their answer in the circuit court, and by assignments of error here, urge that appellees are estopped by the acceptance of their deeds to claim any interest in the 328.4 acres left by Martha Ann Barnes, as, by acceptance of their deeds, they released their entire interest, as heirs, in any property of which Ann M. Williams might die seized and possessed. The chancellor held that appellees had not released their interest in the Martha Ann Barnes tract and decreed partition in accordance with the prayer of the bill. Whether appellees have released any interest in this land constitutes the principal question here.

It is settled in this State that a prospective heir may release his expectancy to his ancestor. (*Alward* v. *Woodard,* 315 Ill. 150; *Mires* v. *Laubenheimer,* 271 id. 296; *Galbraith* v. *McLain,* 84 id. 379.) Such a release operates not as a contract, transfer or conveyance, either to the ancestor or to the other heirs, but as an extinguishment of the right of the one releasing to take any estate by descent. It obliterates the right to inherit to an extent substantially equivalent to such obliteration by the death of the heir expectant, without issue, before the death of the ancestor. The other heirs inherit the entire estate, not upon the theory of an assignment to them, nor contract to assign, but upon an extinguishment of the expectancy. (*Mires* v. *Laubenheimer, supra.*) Appellees do not deny that such is the rule, but they say here that their acceptance of the deed amounted to a release only of such of the estate of their mother as she died seized and possessed of, and that she did not die possessed of the Martha Ann Barnes tract, but had only the reversion, which was subject to defeasance by the birth of a child to Martha Ann Barnes. They say that this is true under the technical construction of the words "seized and

possessed," and if such construction is not to be adopted, the record shows that Ann M. Williams did not intend that appellees should not participate in the Martha Ann Barnes tract, if the latter died without issue.

Seizin and ownership as to corporeal hereditaments, as that term was defined at common law, mean practically the same thing. Hence but one of two or more persons claiming under adverse titles can have seizin of the same land at the same time. Seizin, in a legal sense, was held in *Fort Dearborn Lodge* v. *Klein,* 115 Ill. 177, to mean possession. In *People* v. *Estate of Strom,* 363 Ill. 241, in discussing the words "seized and possessed," as used in the Inheritance Tax statute, this court held that those words may be used contrary to the technical legal meaning, and that, as used in the Inheritance Tax act, they include not only actual seizin or possession but also that which may exist only in contemplation of law, and that to afford a basis for inheritance tax, property need not be in the manual possession of the owner, or reduced to possession by those who represent him, in order that the right to tax may attach. It must be conceded that in this case Ann M. Williams could not, at any time, have been in actual possession of this land in any sense affecting a release by her heirs, as there was an outstanding life-estate in Martha Ann which, upon the death of Ann M. Williams, took effect in the possession of the property. There remained in Ann M. Williams but the reversion. An interest in reversion is, by its nature, intangible and impossible of actual possession. (4 Kent's Com. 13th ed. 355 (382); 1 Washburn's Real Prop. 5th ed. 37.) Tiffany, in volume 1, sec. 129, in his work on Real Property, describes the nature of a reversion as follows: "A reversion, or estate in reversion, is an estate the owner of which, without disposing of the estate itself, has been deprived of the right of present possession by creating a less estate in favor of another." Seizin in law is a right to immediate possession according to the nature of the

estate. (Bouvier's Law Dict.) Possession is a term variable in law. (*People* v. *Estate of Strom, supra.*) Ann M. Williams cannot be said to have died seized and possessed of these lands, in the technical sense of those terms.

The paramount rule of construction of deeds is that the intent of the grantor is to be collected from the whole instrument. Such a construction should be given the deed as carries into effect such intention, where it is legal, rather than a construction which would defeat the intent. It must be observed that the deeds to the appellees do not declare that the grantees accept the same as in full of all interest in the estate of Ann M. Williams, but expressly declare that they are accepted in full of the grantee's entire interest in all property of which the grantor may die seized and possessed. Though there be differing uses of the terms "seized" and "possessed," we can not say that the grantor's intention to include within them the Martha Ann Barnes property, is clearly shown. It is a rule of law that heirs of a deceased cannot be said to have released their inheritance except on proof, by an instrument that is clear and unambiguous. An agreement of a prospective heir with his ancestor to take certain property conveyed to him in full of his expectancy in the grantor's estate must be certain and unambiguous in its terms and be proved with, at least, a reasonable degree of certainty. (*Dahmer* v. *Wensler,* 350 Ill. 23; *Mires* v. *Laubenheimer, supra.*) Where words are used in an instrument which may be understood in one way by some and in another way by others, so that a doubt of their intended meaning arises, such doubt must be resolved in favor of the grantee and against the grantor. *Wise* v. *Wouters,* 288 Ill. 29; *Consolidated Coal Co.* v. *Peers,* 166 id. 361.

Under the rules just cited it becomes important to look to surrounding circumstances to determine if, in them, there be any evidence to indicate the construction placed by the parties upon the words used in the deed. Equity will seek thus to discover and carry into effect the real intention of

the parties. (*Weger* v. *Robinson Nash Motor Co.* 340 Ill. 81.) There is nothing in the evidence which tends in any way to indicate that Ann M. Williams had in mind that there should come to her estate, by reason of the death of Martha Ann Barnes, the title to property in which the appellees were to have no interest. The testimony of Frances Williams, a granddaughter of the deceased, is that on an occasion in 1923 when Byron P. Williams visited her grandmother, they spent some time together in an upper room of the house, and that when Byron left, her grandmother appeared to be much agitated and told her that "Uncle Byron wanted to get the deed to his land in Piatt county. I have made these deeds and they are out of my hands. I couldn't get them now if I wanted to. I have tried to do the best for everybody. Ann, (evidently meaning Martha Ann Barnes,) will probably live the longest, but if she doesn't the land will go to the surviving children." This testimony is uncontradicted and indicates the thought in the mind of the deceased that if Ann died, without children, the land would go to the grantor's children. It is the rule in this State that courts may act upon the admission of a decedent when a question of the intention of such decedent is involved. (*Penn* v. *Oglesby*, 89 Ill. 110.) This statement not only amounts to an admission on the part of Ann M. Williams but indicates her own construction of what she meant by the language used in the deed. Such may be resorted to to determine the true meaning of a written instrument. *Vermont Marble Co.* v. *Bayne*, 356 Ill. 127; *Wright* v. *Loring*, 351 id. 584.

On examination of this record we are of the opinion that it cannot be said that the appellees released their right of expectancy in the Martha Ann Barnes tract, and the chancellor was right in so finding.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*