251 P.2d 206

**SMITH et ux. v. LONG et al.**

No. 7898.

Supreme Court of Idaho.

Dec. 11, 1952.

Dunlap & Dunlap, Caldwell, and Ryan & Ryan, Weiser, for appellants.

Donart & Donart, Weiser, for respondents.

GIVENS, Chief Justice.

Respondents sued to quiet title to the following described land:

"\* \* \*, situate in the County of Washington, State of Idaho, to-wit: Beginning at the northeast corner of Lot Four (4) of Section Seventeen (17), in Township Ten (10), North of Range Five (5) West of the Boise Meridian, and running thence due West to the center of Snake River; thence following up the middle of Snake River in a southerly direction to a point due west of the southeast corner of Lot Two (2) of said Section Seventeen (17), Township and Range aforesaid;

thence due north to the Point of beginning; Together with the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining."

Appellants, by answer and cross-complaint, sued to quiet title to the following described portion in part of the larger tract claimed by respondents:

"Commencing at the fractional section Corner between fractional Sections 8 and 17, Township 10 North, Range 5, West of the Boise Meridian, Washington County, Idaho, the true point of beginning; run thence North 60 degrees Zero minutes West 1169.7 feet along the southerly line of the original Lot 1 of said Section 8 to a point on the East bank of the West branch of Snake River; thence meandering along the said East bank South 6 degrees 32 minutes West 588.9 feet; thence South 3 degrees 31 minutes East 418.3 feet; thence South 13 degrees Zero minutes East 205.3 feet; thence South 8 degrees 3 minutes East 502.1 feet; thence North 90 degrees Zero minutes East 130 feet to a point on the West bank of the East branch of Snake River; thence meandering along the said West bank North 39 degrees 9 minutes East 608.6 feet; thence North 25 degrees 13 minutes East 710.8 feet; thence North 90 degrees Zero minutes East, 120 feet crossing the said East Branch

of Snake River to the true point of beginning."

The court quieted title in the respective parties to the various other tracts involved in the suit, but refused to quiet title in either party to the above small portion claimed by appellants, which is the southern portion of an island. The northern part of this island was patented as Lot 1, Section 8, Township 10 North of Range 5 West of the Boise Meridian, to David P. Maryatt, Jr., August 18, 1887, coming by mesne conveyances to appellants. Respondents own the land east of this portion of the island and east and across a minor channel of the Snake River dividing this portion of the island from respondents' land.

Lot 1 did not run to the river on the south, but to an artificial line fixed by survey. Appellants did not allege this land in Section 17 was originally part of Lot 1, but that it became part of the island by accretion, not avulsion, thus slowly over a period of time, Humble Oil & Refining Co. v. Sun Oil Company, 5 Cir., 190 F.2d 191; Sharp v. Learned, 195 Miss. 201, 14 So. 2d 218, and also that they had acquired it by adverse possession.

The court found no accretion and appellants assign this as error thus:

"5. The court erred in its finding to the effect that no portion of the lands designated as Tract A are accretion lands * * *."

The answer, in Paragraph IV, alleged the portion of the island in dispute "consists of accretions." This was deemed denied, Section 5–812, I.C. The cross-complaint alleged appellants were the owners of the described portion of the island and "all accreted lands."

■ Accretion is the process of gradual addition of solid material, called alluvion, so as to extend the shore line, Frank v. Smith, 138 Neb., 382, 293 N.W. 329, 134 A.L.R. 458, and the riparian owner's title extends over and covers the land thus accreted. State v. Longyear Holding Co., 224 Minn. 451, 29 N.W.2d 657. For other authorities to like unanimous effect, see Vol. 1, Words & Phrases, p. 576 et seq. and 1952 Cum.Ann. Pocket Part.

■ The record shows this portion of the island was not accreted land after 1886, because George Pence, witness for appellants, testified he had been familiar with the island since 1886 and that:

"Q. Did you note while you were— in the early days when you became familiar with it, so that you can testify now, as to how the shape of the island, the river, and the area in there, compares with the present time? A. Well, I can't see any difference. It's all about the same to me.

"Q. As far as you can tell, based on your experience, from the time you first knew it down to the present time,

and I take it you have seen it recently, have you? A. Yes.

"Q. And down to the present time you can't see any appreciable difference, is that right? A. No, I can't. I believe on the upper end it has washed in a little more and filled in with willows and brush and a little more soil on there.

"Q. But its general aspect— A. It is the same.

"Q. The channel? A. It is the same.

"Q. And they are approximately the same. A. Yes.

"Q. What was that island known as in the early days? A. Maryatt Island.

"Q. Was there a man around here by that name? A. Yes.

\* \* \* \* \* \*

"Q. The land in dispute in this case is right in here, from this figure in red, 2 and 3, on south, the southerly end of that island, and it indicates the way of the channel is there, and that is a channel known as the minor channel. In your experience with that channel, about what width is it? A. Oh, I should judge, about a hundred feet.

"Q. Is it rather deep or not? A. Well, I don't know about how deep it is, but the water is running swift in it.

"Q. Did you ever try to cross it with a horse? A. Oh yes, I have, as a boy.

"Q. Would it swim your horse? A. Sometimes.

"Q. Now, from the time you knew it, knew its position, down to the present time, would you say there is or is not any particular change? A. I don't think there is any particular change.

"Q. There is a channel indicated on here as minor channel in those days of approximately the same width, and depth as is running there now, as near as you remember? A. As near as I remember, yes."

It was stipulated that witnesses Frank Townley and Arthur S. Brooks, who saw the island "some place in 1880," would testify the same as Pence as to the condition of the island. Newt Ripper had known the island since 1885 or 86 and testified he had noticed no appreciable change. The certified copy of the Surveyor General's plat, Ptfs. Ex. 2, approved April 19, 1870, shows no island. His survey notes of the area were referred to by M. V. Davenport, a civil engineer and witness for appellants, but they were not introduced in evidence. Attention is called to Sala v. Crane, 38 Idaho 402, 221 P. 556, and Johnson v. Dunn, 46 Idaho 25, 266 P. 1099.

The stipulation referred to by appellants evidently was as follows:

"The Court: \* \* \* As I understand it, shorn of all the preliminary matters, the controversy is about who owns a certain piece of land out here.

"Mr. Donart: That is right. It involves what is claimed as accretion land lying between Section 17 of Township 10 North, Range 5 West of Boise Meridian, and Snake River.

"The Court: Do I understand, then, that everybody contends that the land in question is accretion land? Is that right?

"Mr. Ryan: It is accretion land, but what it is accreted to—

"The Court: That's what I mean. Is that right?

"Mr. Donart: We certainly understood it to be accretion land. I don't know how they understood it.

\* \* \* \* \* \*

"Mr. Donart: We will stipulate, if that's what you are trying to prove.

"Mr. Dunlap: That those are accretion lands.

"Mr. Donart: That the 22.64 acres isn't generally under water. *Not any more.* (Emphasis ours.)

"Mr. Ryan: It lies above the ordinary high water mark.

"Mr. Donart: At the present time, yes."

The court evidently considered these statements of counsel, though using the word "stipulate," as mere colloquies and not a definite agreement controlling as against the evidence above noted.

This state of the record justified the court's findings thus:

"7.

"That Maryatt Island is formed and bounded on the West by the West or main channel of Snake River and on the East by the East or minor channel of Snake River; that as shown on the original survey of Sections 8 and 17, Township 10 North, Range 5 West of the Boise Meridian by the Surveyor General of the United States, the original meander lines as established by said survey during the month of March, 1870, were the meanders of the West or main channel of Snake River and not of the East or minor channel of Snake River, said minor channel not having been shown as meandered by said survey; that the lands hereinabove described in paragraph 6 lie South of the North boundary of said Section 17 extended West, and that no portion of said lands are accretion lands but are substantially in the same condition as they were at the time of the said survey."

and, therefore, appellants have no right to this land as land accreted to the island since the survey in 1870. Harper v. Holston, 119 Wash. 436, 205 P. 1062; Hirt v. Entus, 37 Wash.2d 418, 224 P.2d 620.

Appellants' main assignment of error is that the court refused to quiet title to the southern part of the island above described as acquired by prescription. The

314

court found appellants had been in adverse possession of this land only since May 1, 1947. The suit was commenced April 5, 1950.

The evidence as to possession and enclosure was conflicting. No taxes were assessed or paid on this land as such until 1950.

It was for the trial court to determine the quality and extent of appellants' or their predecessors' possession and we cannot say he was unjustified in finding as he did,[1] and concluding that neither party had proved title to the disputed tract. Hunt v. McDonald, 65 Idaho 610, 149 P.2d 792; Reynolds Irrigation Dist. v. Sproat, 70 Idaho 217, 214 P.2d 880.

Decree affirmed. Costs to respondents.

PORTER, TAYLOR, THOMAS, and KEETON, JJ., concur.

I.         "9.
"That neither the plaintiffs and cross-defendants, nor the defendants and cross-complainants, or their predecessors in interest, have been in possession of any part of the lands hereinabove described in paragraph 6 under any claim of title founded upon a written instrument, judgment or decree; that none of the parties to this action, or their predecessors in interest, protected said lands by substantial enclosure or cultivation and improved the same until the 1st day of May, 1947; that neither the plaintiffs and cross-defendants, nor the defendants and cross-complainants, have established any title by adverse possession to said lands hereinbefore described in paragraph 6."