281 P.2d 483

Marion SMITH and Amel Smith, husband and wife, Plaintiffs-Appellants,

v.

E. W. LONG and Grace Long, husband and wife, Robert I. Long, a single man; John E. Long and Phyllis Long, husband and wife, Defendants-Respondents.

No. 8189.

Supreme Court of Idaho.

March 17, 1955.

Donart & Donart, Weiser, for appellants.

Ryan & Ryan, Weiser, Dunlap & Dunlap, Caldwell, for respondents.

TAYLOR, Chief Justice.

In a previous action between these same parties, each seeking to quiet title to the

same land involved in this action, the court found and decreed that neither party had established title. Referring to the claim of the defendants (respondents here) in the previous action, the court found:

"That every since the 1st day of May, 1947, defendants and cross-complainants have been and now are in the sole and exclusive, quiet, peaceful, open and notorious possession and occupancy of said real property" and "have paid all taxes which have been levied and assessed against said real property."

"* * * that none of the parties to this action, or their predecessors in interest, protected said lands by substantial enclosure or cultivation and improved the same until the 1st day of May, 1947; * * *"

The defendants in that action appealed, and this court affirmed the decree. Smith v. Long, 73 Idaho 309, 251 P.2d 206. In the former action defendants made two claims to the land; one by adverse possession, and the other by accretion. The court found that no part of the land was the result of accretion. Even if it were, their right to it as such would in turn depend upon their right by adverse possession to the adjacent land to which the accretion was claimed to have attached. Adverse possession was, therefore, the foundation of defendants' claim, and it was necessary for them to prove that such possession continued over a period of five years. §§ 5–207 and 5–210 I.C. Such possession was put in issue by the pleadings and was actually litigated and determined as indicated by the findings above quoted. It was, therefore, conclusively settled as to the parties and their privies that defendants' adverse possession commenced May 1, 1947. Jensen v. Berry & Ball Co., 37 Idaho 394, 216 P. 1033; Marshall v. Underwood, 38 Idaho 464, 221 P. 1105; Giuffre v. Lauricella, 25 Cal.App. 422, 143 P. 1061; Bijou Irr. Dist. v. Weldon Valley Ditch Co., 67 Colo. 336, 184 P. 382; Dugan v. Wilms, 93 Okl. 89, 219 P. 651; Bowman v. Parks, 166 Iowa 403, 147 N.W. 850; Pontiac Mut. County Fire & Lightning Ins. Co. v. Sheibley, 279 Ill. 118, 116 N.E. 644; Linton v. Omaha Wholesale Produce Market House Co., 8 Cir., 218 F. 331; United States v. Moser, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262; 2 Freeman on Judgments (5th ed.) § 670.

■ The date of the commencement of this action does not regularly appear from the record, the clerk having omitted from the transcript the date of the filing of the complaint. However, it was acknowledged March 29, 1952, and defendants' demurrer was filed April 16, 1952, and in a written stipulation between counsel the filing date is referred to as the 1st day of April, 1952. Accepting this as the correct date, it follows that this action was commenced thirty days before the expiration of the five year period of adverse possession, which otherwise would have matured and per-

fected defendants' title. However complete and perfect defendants' title by adverse possession at the end of the five year period on May 1, 1952, may be as to others, as to the plaintiffs the period of adverse possession was interrupted by the filing of the complaint herein, and their rights as against the plaintiffs must be determined as of April 1, 1952. Westphal v. Arnoux, 51 Cal.App. 532, 197 P. 395.

Thus, the paramount question is the validity of the title now for the first time asserted by the plaintiffs in this action. In both actions the plaintiffs asserted title on the theory that the land in dispute lies between the government meander line of the Snake River and the high-water mark. They were defeated in the first action because the conveyances, under which they claimed title, described and were limited to specifically numbered lots in a subdivision known as the Sunnyside Orchard Tract. This subdivision, apparently created and recorded in 1909, was laid out, over and upon original government Lots 2, 3 and 4, in Section 17, Township 10 North, Range 5 West of the Boise Meridian, and other property. The lots created by the subdivision do not purport to extend beyond the water line of the east, or nearest, channel of the Snake River. Hence, it was held that under such conveyances, plaintiffs acquired no title to the land involved herein, which lies west of the east channel of the river and upon an island between the east channel and the main channel.

At the time of the creation of the Sunnyside Orchard Tract or subdivision, the Sunnyside Orchard Company, a corporation, was the owner of government Lots 2, 3 and 4, in Section 17. But the plat did not purport to cover and no sale had ever been made by that company of any land lying on the island beyond the east channel of the river.

In December, 1917, the charter of the Sunnyside Orchard Company was forfeited by the state. At that time its entire stock was owned by George M. Waterhouse, August Brockman and A. A. Record. Subsequently to the trial of the prior action, the plaintiffs obtained quitclaim deeds from all of the heirs of all three of the above-named stockholders (deceased). These deeds describe and purport to convey to the plaintiffs all of that portion of Lots 2, 3 and 4, in Section 17, lying between the west boundary line of the platted lots of the Sunnyside Orchard Tract and the high-water mark of the main channel of the Snake River. Founding their claim upon these deeds the plaintiffs commenced this action to quiet title to that part of the island, lying in Section 17, as a part of the original government Lot 4.

Upon dissolution of a corporation, the corporate property vests in its stockholders, subject to the liabilities of the corporation. Taylor v. Interstate Invest-

ment Co., 75 Wash. 490, 135 P. 240; Service & Wright Lbr. Co. v. Sumpter Valley Ry. Co., 81 Or. 32, 149 P. 531, 152 P. 262, 158 P. 175; Baldwin v. Johnson, 95 Tex. 85, 65 S.W. 171; Marsh Wood Products Co. v. Babcock & Wilcox Co., 207 Wis. 209, 240 N.W. 392; Pontiac Trust Co. v. Newell, 266 Mich. 490, 254 N.W. 178; Stearns Coal & Lumber Co. v. Van Winkle, 6 Cir., 221 F. 590; Late Corporation of The Church of Jesus Christ of Latter Day Saints v. United States, 136 U.S. 1, 10 S.Ct. 792, 34 L.Ed. 478; 19 C.J.S., Corporations, § 1730b. The quitclaim deeds from the heirs of the stockholders, who died seized of the property of the Sunnyside Orchard Company, are effective to convey to the plaintiffs whatever title those stockholders and their heirs held in the land involved. Biaggi v. Ramont, 189 Cal. 675, 209 P. 892; Buller v. Buller, 62 Cal.App.2d 694, 145 P.2d 653; 26 C.J.S., Deeds, § 118. Cf. Crane v. French, 39 Cal. App.2d 642, 104 P.2d 53 (deed by former officers and directors).

The ultimate question then is, whether the respective owners in the chain of title to the original government Lot 4, in Section 17, held title to that portion of the island opposite that lot and across the minor or east channel of the river.

The general rules applicable here were stated in Johnson v. Hurst, 10 Idaho 308, at page 318, 77 P. 784, 788, as follows:

"It is conceded as the general rule of law that the meander line run in surveying public lands bordering upon a navigable river is not a line of boundary, but one designed merely to point out the sinuosity of the bank of the stream, and as a means only of ascertaining the quantity of land in the fraction that is to be paid for by the purchaser; and that the water course, and not the meander line as actually run on the land, becomes the true boundary line." See authorities there cited.

And, after reviewing a number of cases, Justice Ailshie further said:

"In no case called to our attention, where the court has refused to allow the grantee's true boundary line to extend to the main stream or water line, has it appeared that the strip or tract of land claimed was within the section that contained the fractional lots patented; nor does it appear in any of those cases that the lands were returned as surveyed on all sides of the tract claimed. In other words, wherever it has appeared from the notes and official plats that all the lands within the legal subdivision as directed to be surveyed by the United States statutes has been returned as surveyed and the remainder of those subdivisions is shown to be the waters of a navigable stream, the courts have uniformly held that the grantee to lots or fractional subdivisions abutting on the meander line takes title to the stream." Johnson v.

Hurst, 10 Idaho 308, at page 323, 77 P. 784, 790.

In the Johnson-Hurst case, an exception was claimed to the general rule that where the quantity of land lying between the meander line and the water line, was equal to or greater than that contained in the original fraction or lot, then the rule is not applicable. This objection was overruled and in that case an area, between the meander line and the stream greater than that embraced within the original lots, was held to belong to the owner of such lots. In the case before us the disputed strip, being around sixteen acres, is less in quantity than the original Lot 4, containing 46 acres.

In Johnson v. Johnson, 14 Idaho 561, 95 P. 499, 502, 24 L.R.A.,N.S., 1240, the rules applied in Johnson v. Hurst, supra, were followed and applied to the effect that a 25 acre island, lying between the north and south channels on the Snake River, was held to be the property of the owner of the abutting lots on the north side of the river. The south channel was found to be the main channel. In the north channel there was a "small neck of land extending from the island" to the north bank. The water of the river could get around this "neck or tongue at ordinary high water". The record indicated that the government did not consider the island of sufficient importance to reserve it from the grant of lots on the north bank, no intention to make such a reservation appearing from the record.

The same rule was followed by the court in Moss & Brother v. Ramey, 14 Idaho 598, 95 P. 513, and in Lattig v. Scott, 17 Idaho 506, 107 P. 47. On appeal the latter case was reversed by the Supreme Court of the United States in Scott v. Lattig, 227 U.S. 229, 33 S.Ct. 242, 244, 57 L.Ed. 490. On the collateral issue as to the ownership of the bed of navigable streams, the Supreme Court held that under federal law the riparian owner's title stops at the stream, and, upon admission of the state to the Union, the federal government's title to the bed of such streams passed to the state. After statehood, the right of the riparian owner in such underwater land would depend upon the law of the state.

As to the question we are presently concerned with, the Supreme Court of the United States held the island involved in the Scott-Lattig case, although on the riparian owner's side of the main channel, was "fast dry land"; that it was in existence and in substantially the same condition at the time of the original survey in 1868, and at the time of statehood in 1890. It was not mentioned in the field notes or plat of the original survey. The meander line of that survey was run along the east bank of the east channel. The island was, therefore, completely omitted from the original survey, as to which the court said: "The error in omitting it from the survey did not devest the United States of the title, or interpose any obstacle to surveying it at a later time." The island in that case comprised

138.15 acres, and was considered of sufficient importance to justify a survey. Scott settled on the island in 1904, and upon his application it was surveyed by the general land office in 1906 and his homestead entry was approved.

Following the reversal of Lattig v. Scott, the case of Moss & Brother v. Ramey again came before this court, and, in view of the decision of the Supreme Court of the United States, was remanded to the trial court for the trial and determination of the question as to whether or not the island there involved was of such character that title thereto had not passed from the government. Moss & Brother v. Ramey, 25 Idaho 1, 136 P. 608.

The question was again presented to the court in Callahan v. Price, 26 Idaho 745, 146 P. 732. In that case the court expressly reversed Johnson v. Hurst, Lattig v. Scott, Johnson v. Johnson, and Ulbright v. Baslington, 20 Idaho 539, 119 P. 292, 294, insofar as they held that the patentee from the government acquired title to the thread of the stream, and held instead that such title extends no farther than the natural highwater line. That case involved an island in the Salmon River. To the west flowed the main channel and on the east the minor channel. Both carried water throughout the season and the island appeared to be permanent and in the same general condition as when the lands on each side were surveyed. The appellants claimed the island as a part of their government lots on the east bank of the river. This bank was surveyed in 1880, and the survey did not indicate the existence of the island. The island contained forty to fifty acres. It was held that it was unsurveyed public domain and did not pass to the patentees on the east bank.

In Younie v. Sheek, 44 Idaho 767, 260 P. 419, this court held that the patentee of lots bordering on the west meander line of the Snake River held title to the west bank of the permanent channel, although between that channel and the meander line there was a so-called channel which was filled with water in the late spring and early summer and dry the remainder of the year. There the land involved was not considered an island because it was subject to flooding each year, and that was the condition at statehood. The court quoted and followed the language of Johnson v. Hurst which we have last above set out.

Here the east or minor channel, though a permanent channel, in the sense that water flows therein throughout the season, is a small channel by comparison with the main channel farther west. However, due to its permanent character, the land lying between it and the main channel is properly regarded as an island, and the trial court in effect so found.

For the purpose of clarity, we have attached three maps which we have designated as exhibits 1, 2 and 3.

Exhibit 1 is a composite, prepared from exhibits in evidence, intended to show the relation of the channels of the river to the government survey, sections, lots and the meander line.

Exhibit #1

Exhibit 2 is a photostatic copy of the plat approved by the surveyor general April 19, 1870, pertinent part of the original government

Exhibit #2

Exhibit 3 is a reproduction of an aerial photograph showing the relative importance of the channels of the river and the location and size of the island, the southern tip of which is in issue.

Exhibit #3

However, there is a vital distinction to be noted between this case and Callahan v. Price, supra, and the previous cases therein overruled. In those cases the islands involved were not surveyed, but were apparently ignored by the surveyor and the meander lines run along the bank of the channel bordering the riparian claimants' property. In this case all of the island was surveyed, except a small portion on the south end thereof, aggregating 22.64 acres. Approximately six acres of this unsurveyed portion was decreed to the defendants as a part of Lot 1 in Section 8. The remainder, approximately 16 acres, lies in Section 17 opposite plaintiffs' Lot 4. It appears that the surveyor who made the survey for the general land office in 1870, meandered the main channel of the river, except that when he came to the minor east channel he followed that channel through Lot 4 to the section line between Sections 8 and 17 and then crossed the minor channel in a northwesterly direction back to the east bank of the main channel, thus cutting off and excluding the southern tip of the island. The photostatic copy of the original plat of that survey (see attached exhibit 2) does not show the existence or course of the east or minor channel, and shows the area, occupied by the land here involved, to be in the Snake River. In other words, the surveyor returned all of the land in Sections 8 and 17 on the east side of the main channel as surveyed, and shows all of the remainder of the subdivisions therein to be the waters of the river.

■■ The trial court in both the previous action and in this action found that the original general land office survey meandered the main channel and not the east or minor channel. Such being the facts, it follows that the meander line is not the west boundary of plaintiffs' property, and that their patentee predecessor acquired title to the ordinary high-water line along the east bank of the main channel. Stroup v. Matthews, 44 Idaho 134, 255 P. 406; State v. Imlah, 135 Or. 66, 294 P. 1046; United States v. Otley, 9 Cir., 127 F.2d 988; Hardin v. Jordan, 140 U.S. 371, 11 S.Ct. 808, 35 L.Ed. 428; United States v. Lane, 260 U.S. 662, 43 S.Ct. 236, 67 L.Ed. 448. Plaintiffs by mesne conveyances have acquired that title. Defendants' title by adverse possession not having matured at the time this action commenced, plaintiffs are entitled to a decree quieting their title as against the claims of the defendants.

■■ Defendants plead the bar of the statutes of limitation. §§ 5–203, 5–204, and 5–205 I.C. Section 5–205 I.C., requires action to be commenced within five years of the accrual of a right of entry. Assuming this section applicable, plaintiffs' action was commenced a month after they acquired their title, and less than five years after the entry made by defendants. Sections 5–203 and 5–204 I.C. require plaintiffs or their predecessors to have been "seized or possessed" of the property within five years of the commencement of the action. Defendants contend, since neither plaintiffs nor

their predecessors have had actual possession or occupancy within that time, their cause is barred.

"The requirement of seisin or possession is met when it is established that the plaintiff was possessed of legal title, and this seisin can be destroyed only by establishing the fact that a title by adverse possession was acquired by the defendant." 16 Cal.Jur., Limitation of Actions, § 43.

Westphal v. Arnoux, 51 Cal.App. 532, 197 P. 395; People's Water Co. v. Boromeo, 31 Cal.App. 270, 160 P. 574; McKelvey v. Rodriquez, 57 Cal.App.2d 214, 134 P.2d 870; Wilkerson v. Thomas, 121 Cal.App.2d 479, 263 P.2d 678.

This rule is expressed in § 5-206 I.C., and was applied by this court in Salvis v. Lawyer, 73 Idaho 469, 253 P.2d 589. See also Bower v. Kollmeyer, 31 Idaho 712, 175 P. 964; Truckee River General Electric Co. v. Anderson, 40 Cal.App. 526, 181 P. 243; Akley v. Bassett, 189 Cal. 625, 209 P. 576; Comstock v. Finn, 13 Cal.App.2d 151, 56 P.2d 957; Borden v. Boyvin, 55 Cal.App. 2d 432, 130 P.2d 718; and, for definition of "seized" or "seisin", Fountain v. Lewiston Nat. Bank, 11 Idaho 451, 83 P. 505; Crandall v. Goss, 30 Idaho 661, 167 P. 1025; Chapin Lbr. Co. v. Day, 106 Colo. 194, 103 P.2d 14; Smith v. Williamson, 306 Ky. 467, 208 S.W.2d 503; Williams v. Swango, 365 Ill. 549, 7 N.E.2d 306; 79 C.J.S. page 1024.

It appears from the record that defendants' claim was initiated in good faith, and that they and their predecessors occupied the property adversely to the owners under color or claim of title, from May 1, 1947. Under such circumstances, if during such occupancy they, in good faith, made valuable, permanent improvements upon the property, they would be entitled to compensation therefor. 42 C.J.S., Improvements, § 7.

The decree is reversed and the cause remanded with directions to the trial court to enter judgment quieting plaintiffs' title; to find what if any permanent improvements were made on the property by the defendants and their predecessors during their occupancy from May 1, 1947; to determine the amount, if any, in which the value of the property has been enhanced thereby; and to enter judgment for that amount for defendants against plaintiffs, secured by a lien upon the land involved. The trial court may in its discretion receive further evidence as to the fact of, and increased value due to, improvements, and permit amendment of defendants' pleadings to conform thereto.

Costs to appellants.

KEETON, PORTER and SMITH, JJ., and SUTPHEN, D. J., concur.